# JUNE TERM, 1891.[*]

ELBRIDGE G. GOODRICH v. FRANK B. SMITH.

*Vendor and vendee—Fraud—Cancellation of deed.*[1]

Complainant filed a bill to set aside an exchange of real estate owned by him for two mortgages upon a farm formerly owned by the defendant, and for the restoration of his property, for alleged fraud in the transfer because of the falsity of the representations which brought it about; and the Court find that the essential allegations of the bill are established by the testimony, and that complainant is entitled to the relief prayed for. Only questions of fact are involved.

Appeal from Hillsdale. (Lane, J.) Argued May 15, 1891. Decided July 28, 1891.

Bill to set aside an exchange of real estate for mortgages for alleged fraud in the transfer. Decree dismissing bill reversed, and one entered in this Court granting the relief prayed. The facts are stated in the opinion.

*James S. Galloway* and *E. L. Koon* (*Warner J. Sampson,* of counsel), for complainant.

*A. B. St. John, Pealer Bros.,* and *Dallas Boudeman,* for defendant.

MORSE, J. The complainant is an old gentleman, now

* Continued from Vol. 86.
[1] For full digest of points decided, see *Table of Cases Reported.*

over 70 years of age. The evidence shows that he is an illiterate man, although he has transacted in his life-time considerable business in the way of buying, selling, and exchanging farms,. and in loaning money, and more than is ordinarily done by people of his class and condition. He was a farmer for many years, owning and living upon several farms in different parts of the country. He finally traded for 17 lots and 13 houses in the city of Hillsdale. He lived in one of these houses in 1888, with his sister, who kept house for him, he having never been married. On the 8th of September, 1888, he exchanged all of this Hillsdale property for two mortgages upon a farm, formerly owned by the defendant, in Kalamazoo county. The mortgages were for $5,000 and $8,000, respectively.. This bill is filed against the defendant to set aside said exchange, and to have his property restored to complainant, for alleged fraud in the transfer, and the falsity of the representations which brought it about.

The bill alleges the fraud to consist in the following:

1. That the said defendant falsely represented to him that the land covered by the two mortgages was very valuable, and worth a large sum of money, and that the defendant had lately conveyed the said farm to Frank C. Davis and Jenny M. Davis, his wife, who were the makers of the said mortgages; that they, the Davises, had paid Smith down the sum of $12,000 in cash; and that the two mortgages, and the notes for which they were security, were given in part payment of the purchase money for said farm.

2. That defendant represented that said Davis was a man of property; that the notes were good, and could be collected of said Davis.

3. That Smith also represented that these two mortgages were first mortgages upon the land, and that there were no other mortgages or liens ahead of these mortgages, but that all other mortgages and liens upon said premises were subject to the lien of these mortgages, and that such mortgages were first-class security.

Complainant alleges that he was induced by these representations to make the trade, and that each and all of them were false, and known to be so by the defendant; that the exchange was made at the home of Smith in Three Rivers, Mich.; that the defendant is a man of extremely plausible manners, well calculated to deceive the complainant, who is a plain, uneducated man, but little accustomed to business; that said Smith lived in such fine style, with all the appearances of wealth, that he so boasted of his riches, and entertained the complainant so handsomely, that he entirely won his confidence, and induced him to make the trade by frequent repetition of all the false and fraudulent statements hereinbefore set forth, and that in making the exchange he relied entirely upon such statements.

He further charges that the said mortgages were not first mortgages, but both are and were at the time of the trade subject to a $20,000 mortgage, executed August 7, 1885, by the said defendant, Frank B. Smith, to Marie M. Smith, Henry B. Smith, and Mamie B. Smith, and assigned by them to the Standard Life & Accident Insurance Company of Detroit, Mich., which mortgage was the first mortgage lien upon the premises, and upon which there was due and unpaid the sum of $20,000; that the conveyance of the farm by the defendant to Davis and his wife was fraudulent, and for the purpose of enabling Smith to perpetrate upon some one the same fraud that he practiced upon complainant; that Davis and wife were both pecuniarily irresponsible, and that no payment of $12,000, in cash or otherwise, was ever made by them to Smith.

Complainant alleges a tender of an assignment back to defendant of these mortgages, and a demand of Smith that he reconvey the premises in Hillsdale back to complainant, which tender and demand were both refused by

defendant. He prays that his deed to Smith may be
declared void, and that Smith be decreed to execute to
him a proper deed of the Hillsdale property, and to
accept from complainant the mortgages and his reassign-
ment thereof, and that an injunction issue to preserve
his rights in the premises.

Defendant answered, denying any false representations.

The case was brought on for hearing in the circuit
court for the county of Hillsdale, in chancery, upon tes-
timony taken in open court. The circuit judge, Hon. V.
H. Lane, announced his opinion in favor of defendant,
and directed a decree dismissing complainant's bill. Before
the decree was drafted complainant made application to
amend his bill, and it was permitted to be amended.
The material averments in this amended bill, in addition
to those in the original bill, were that defendant repre-
sented that Mrs. Davis had $20,000 coming to her from
her grandfather's estate; that Mrs. Davis was, at the time
she executed the notes and mortgages obtained by com-
plainant of Smith, a minor, under the age of 21 years,
and therefore they could not be enforced against her,
which fact was known to the defendant when the trade
was made; that only a small sum was in fact coming to
Mrs. Davis from her grandfather, which the defendant
also well knew; also that Smith, at the time of the
exchange, was wholly irresponsible financially; that the
land was not worth the sum of $45,000, and that the
mortgages received by complainant were worthless.

The defendant answered, denying all charges of fraud,
and alleging that since the commencement of this suit he
had discovered that Mrs. Davis was a minor at the time
she executed the notes and mortgages, but that since he
had made such discovery he had procured from said
Jennie M. Davis and her husband, Frank O. Davis, a
ratification of both said notes and mortgages for the ben-

efit of complainant, and had tendered the same to complainant's solicitors, and filed the same with the clerk of the court, for the purpose of delivering the same to the complainant, if he desired them.

Testimony was taken upon these new issues, which ended in the court adhering to its former decision, the circuit judge ffling a written opinion, which is given in the record.

The complainant appeals.

After a careful examination of the record, I am satisfied, as was the court below, that the complainant has been wronged. He has, in effect, been defrauded out of his property. I do not consider it profitable to go into a detailed discussion of the testimony. It is true that the complainant's case rests mainly upon his own testimony, except as he is corroborated by some of the facts and circumstances disclosed in the testimony. He is contradicted on every material point by the defendant, whose testimony is sustained in many particulars by the testimony of Burt Smith, his brother, and by his mother and Davis. I must, under the circumstances, give credence to the complainant. The two Smiths were impeached by some of the most substantial citizens of Three Rivers, and some of those who were brought to sustain their reputation for truth and veracity lived outside of the village, and admitted that in the village there was talk both ways about them. It is certain that they do not bear a good general reputation for truth and veracity in the community where they live, nor does the record in this case, or their transactions shown therein, impress me favorably. Frank, at least, is too sharp to be honest. The mother was not a candid witness, and absolutely refused to answer questions on cross-examination that were pertinent and proper; and her refusal to do so might have been based on a desire upon her part to

avoid details, which, if given, might have seriously affected or impaired the value of some of her evidence given on her direct examination. The man Davis would seem to be a mere tool of Smith. In the language attributed to the circuit judge, when he announced his oral decision, it seems to me that—

"The testimony of the members of the family of Mr. Smith, when taken as a whole, shows a very singular course of dealing between the members of the family,—a course which is not quite consistent, such as the testimony discloses, with entire good faith and honesty on the part of Mr. Smith."

The testimony shows that the farm in Kalamazoo county, upon which these mortgages were given, originally belonged to the father of the defendant. He died, and the farm became the property of the mother and the two sons. Many shifts and changes of the property were thereafter made; and July 27, 1885, the mother and Burt Smith deeded their interests to the defendant, who executed back to his mother a mortgage of $25,000 and another of $15,000. These mortgages were discharged August 18, 1885. June 4, 1885, a mortgage was executed to Wolf Bros. for $23,000, and afterwards discharged. When the mortgages to his mother were discharged, there was a $20,000 mortgage on the land to her and Henry B. Smith (Burt) and Mamie B. Smith, dated August 7, 1885, which by its terms became due August 7, 1888. This mortgage is still on the premises, and was the first mortgage lien upon the land, and past due when the complainant traded with defendant. November 12, 1887, Frank B. Smith executed to his uncle, J. N. Wheeler, of Chicago, Ill., a bill of sale of all his personal property upon this farm, including the wheat upon the ground, for an expressed consideration of $10,000; and Wheeler gave him a power of attorney to manage and dispose of this property, as well as to manage the

farm, of which the defendant executed to him at the same time a lease to run for five years from November 12, 1887, for which lease Wheeler was to pay him $2,000 per year, or $10,000 in all, the same consideration expressed in the bill of sale of the personal property. This transaction is claimed by complainant's counsel to have been made to hinder and delay or defraud defendant's creditors, but this is denied by defendant. With this farm in this situation, the defendant on the 21st day of December, 1887, contracted with Davis in writing, as follows, each keeping a duplicate copy:

"Sold to Frank C. Davis and wife as follows [here follows description of land], containing 646 acres, more or less, to be paid for as follows:

| | |
|---|---:|
| By paying first mortgage, given Aug. 7, '85, due Aug. 5, '88, amount of same | $20,000 00 |
| By paying interest due July 1, 1887, $700, on the $20,000 | 700 00 |
| By paying interest from July 1, 1887, to Dec. 21, 1887, on $20,000 | 661 00 |
| By paying interest on $700 from July 1, 1887, to Dec. 21, 1887 | 33 06 |
| By F. B. Smith's note, due on or before Jan. 1, 1888, given October 1, 1887 | 238 00 |
| By interest on the same | 3 70 |
| By one-half interest in wheat 8 acres on Geo. Davis' farm | 28 00 |
| By one pair of horses and wagon (Davis' interest) | 225 00 |
| By lease from John N. Wheeler, Nov. 12, 1887, for 5 years, to run 4 years, 8 mo., 20 days | 9,977 79 |
| Cash | 133 45 |
| Order for work | 200 00 |
| By mortgage on above-described land | 8,000 00 |
| By mortgage on above-described land | 5,000 00 |
| | $45,000 00 |

"The above is terms of sale as agreed upon by and between Frank B. Smith and Frank C. Davis, this 21st day of December, 1887.

"FRANK B. SMITH.
"FRANK C. DAVIS."

The land was deeded to the Davises in pursuance of this contract. Davis was a man having, all told, at the time he made this purchase, between $500 and $600. The mortgage of $20,000, on which there was then due $1,394.06 interest, would fall due in less than a year, and the lease running to Wheeler had nearly its full term, less than two months of the same having expired. The sale of this land to Davis has every appearance, upon its face, of a sham transaction for some purpose other than an honest one; and there is testimony and various facts and circumstances tending to show that the conveyance was not a real one, and made with some fraudulent object in view. The purported payment of $12,000 down, consisted of the estimated incumbrance of this Wheeler lease, over $9,000; the interest due on this $20,000 mortgage, which has never been paid; Davis' interest in a span of horses and wagon; a note of Smith; an order for work; and the paltry sum of $133.45 in cash.

It is not disputed that Goodrich was informed that Davis paid $12,000 down to Smith upon the purchase of this farm. It is denied that he was told that the payment was made in cash, but it is nowhere shown that he was told in what the payment consisted. An attempt was made to prove that Goodrich wanted a copy of this contract, and was furnished one, which he took home with him, and that he gave a receipt for the same, which was retained by Smith, a letter-press copy of which was put in evidence. The claimed original was in evidence, but during the trial was left in the hands of the clerk and lost. Goodrich denies taking any such copy, or that he ever saw the contract. He thinks the signature to the receipt looks like his own, but denies that he ever wrote it. Why Smith should take a receipt for this copy that he swears he let Goodrich have is not

explained very satisfactorily. It would seem to have been unnecessary, unless Smith was preparing for the contingency of a lawsuit, and preserving evidence in view of such contingency.

We think from all the testimony that Goodrich was given to understand expressly. that Davis paid $12,000 cash down on the purchase of this land, and that it had its influence in inducing him to make the trade. He was also told that Davis and his wife had property, and that the notes were good and collectible against them, which was untrue. Goodrich swears that he was told by both Smith and Davis that the $20,000 mortgage was subject to the ones he received, which testimony, we are satisfied, is the truth. It does not seem possible that any man, knowing the whole circumstances of Smith's sale of the land to Davis, and that this mortgage was then past due, with accrued interest upon it, with no means of his own to meet it, would have taken these later mortgages for his property in Hillsdale. It is testified to by both the Smith brothers and their mother that Goodrich had the abstracts of this farm and examined them; and a man by the name of Drake opportunely happened in just then to pay Smith some rent, and swears that he saw the abstracts in complainant's hands, who was examining them, and, while Drake was there, asked several questions about this $20,000 mortgage, which, if true, would clearly indicate that he knew the situation of this mortgage, and that it was a prior lien to the ones that he received. But Drake's testimony does not impress me as truthful, and his character as developed by his own testimony, and a refusal to answer certain questions touching his life, does not seem to be of the very best.

I am of the opinion that Mr. Goodrich never examined the abstracts, and that his story that he only saw

them as Smith took them out and put them back again, is true. He testifies that, while he usually required an abstract in his real-estate deals, he had never examined one himself, always employing some one else to do this. for him; that he could not read and understand one. He was at the home of Smith, where he had been for three days, and, during that time, had been led by the shrewdness and artfulness of Smith to have implicit confidence in him, and he trusted his declaration, and that. of Davis, that his mortgages were all right, and the first liens upon the land. This confidence was not abated until just before he left for home, when he was informed by some one in Three Rivers that he had better look out, and that Davis had paid nothing on the farm, and was irresponsible financially. As soon as he reached his home, disturbed by this warning, he consulted an attorney, placed the matter in his hands, and the result of the attorney's investigation was the beginning of this. suit soon thereafter.

But, even if he did examine the abstracts, he would not have been likely to have gained much knowledge from them. An abstract of any considerable length, and with a multitude of conveyances, is not an easy matter of dissection by a man of the education or experience of Goodrich, and it sometimes takes a pretty good lawyer to unravel one, and get at the real situation of the title. These abstracts, four in number, were elaborate ones, containing, respectively, 55, 30, 20, and 35 odd conveyances. The circuit judge says in his written opinion that the complainant possessed information that showed him beyond question that the $20,000 mortgage must. have been a prior lien to the ones he was getting by this. trade. This the circuit judge probably deduces from the fact that Goodrich admits that Davis told him that on the purchase of the place they only gave these two

mortgages of $5,000 and $8,000; that he knew the $20,000 mortgage was outstanding against the farm, and ought to have known, it being given by some one else than Davis, that it was a prior lien. This does not necessarily follow when we consider the illiteracy of Goodrich, and the fact that he was informed by both Smith and Davis, as he testifies, that the mortgage was subject to those he was receiving. He says that he paid no attention to this mortgage on the strength of these representations, and relied implicitly upon them.

It is a harsh rule that would impose upon Goodrich, and men like him, who are almost invariably the ones defrauded in such transactions as this was, the standard of knowledge of conveyances and titles that courts possess. It is not a thing to be believed that Goodrich knew the *status* of this mortgage, and did what he did. An excuse for his action cannot be found in such case, except upon the theory that he was a consummate fool, virtually giving away his Hillsdale property, which was the bulk of his possessions. But we can well understand how his confidence in Smith, and his ignorance of this kind of business, could have led, and did lead, him into this trade, with his eyes shut, as it were, by such confidence and ignorance, so that he could not see as we might have seen. The circuit judge was evidently strongly impressed with the injustice that his decision would involve. In conclusion he says:

"The appearance of the witnesses for the defense, so far as called to certify to the circumstances surrounding the exchange, and the character of the narrative they present, in some particulars, at least, was not such as commended itself very strongly to the court. Some of the evidence of the defense it would be very hard to explain away, however. These considerations compel a denial of the relief prayed. I am impressed with the feeling that exact justice does not follow this conclusion.

I think that the mortgages are really of little value to complainant. The land in question might well be said, under the proof, to be worth the face of the $20,000 and $8,000 and $5,000 mortgages, or nearly so. But the second mortgages are unmarketable, and complainant is not financially able to take care of the $20,000, and must inevitably lose, and quite largely, by the transaction. It is not every loss that the losser may insist on another making good, however.

"As I took occasion to say when this case was submitted on the original hearing, I think that the application of what I understand to be the law to the facts in the case, as established by · the complainant's proofs, operates with unfortunate severity on complainant. I may wrongly interpret the conduct. of defendant and some of his witnesses. The business habits of defendant seem in some respects peculiar, and I may put a wrong construction upon some of the peculiar transactions developed in the case. The sale of a $45,000 farm to Davis and wife while Davis had not to exceed a few hundred dollars to buy with, the circumstances surrounding the furnishing the memorandum of sale between Smith and Davis to complainant, as well as the dealings between the other members of the family and Wheeler, are difficult to understand and explain on any well-recognized business principles, though it might not conclusively establish dishonesty in the deal with complainant."

It has always seemed to me that in an equity case, where this Court takes the case and deals with it *de novo*, the justice and equity of the case upon the whole record should control it, and that no harsh rule should be allowed to defeat justice, and put a premium upon wrong doing or fraud; such, for instance, as in this case holding the complainant to a degree of care in ascertaining the true state of this $20,000 mortgage such as we might think a man of ordinary prudence and business knowledge would have used in his place. Each individual case should be ruled by its own facts and circumstances, having in view always that justice may prevail and wrong be righted. If this bill is dismissed, the com-

plainant will lose nearly his all, while, if he prevails, the defendant loses nothing, except the costs of litigation, when he ought to be punished, if possible, for a gross fraud. I do not think the contributory negligence of the complainant, if there be any, should stand in the way of his recovery in such a case as this. I am satisfied that the complainant has been defrauded; that the essential allegations of his bill of complaint have been made out; and that he is entitled to the relief asked.

The decree of the court below will be set aside and vacated, and a decree entered here in conformity to the prayer of complainant's bill, with costs of both courts.

The other Justices concurred.