NELSON *v.* GIBE.

1. VENDOR AND PURCHASER—EQUITY—SPECIFIC PERFORMANCE.
The vendor in a land contract who has been dispossessed of a portion of the premises described, by adverse occupation of third parties, may not compel the specific performance of the contract and the payment of the entire purchase price, on the theory that a conveyance of the parcel as bounded and determined by such adverse holding and by the acquiescence of the grantor's predecessors in title, should be accepted as a performance of the agreement.

2. SAME — CONTRACT — BREACH — SPECIFIC ENFORCEMENT PRO TANTO.
The purchaser may, however, elect to accept the premises to which the vendor has title, as a performance *pro tanto* and abate the purchase price in proportion to the deficiency.

3. SAME—FORECLOSURE OF CONTRACT—EQUITABLE RELIEF TO DEFENDANT.
Under proper pleadings, the purchaser may obtain affirmative relief by virtue of the deficiency, in the form of an accounting for overpayments made, specific enforcement *pro tanto* and an equitable adjustment of the purchase price, whether the suit by the purchaser is to foreclose the land contract or compel its specific performance.

Appeal from Newaygo; Palmer, J. Submitted April 11, 1910. (Docket No. 57.) Decided July 15, 1910.

Bill by Swan Nelson and others against Samuel B. Gibe to foreclose a land contract. Defendants filed an answer in the nature of a cross-bill claiming affirmative relief. From a decree for complainants, defendant appeals. Reversed, and remanded.

*George Luton,* for complainants.

*Albert G. Day,* for defendant.

McALVAY, J. The bill of complaint was filed in this case by complainants against defendant to foreclose a cer-

tain land contract, claiming a balance due and unpaid. The contract in question was entered into between the parties December 3, 1904, wherein complainants, who claimed to own the title in fee of the premises, agreed to sell, and defendant to purchase, "all that certain piece or parcel of land situate and being in the village and county of Newaygo, State of Michigan, and described as lot 14 in block 116 of the village of Newaygo, according to the map or plat on record in the office of the register of deeds of Newaygo county," for the consideration of $500 with interest at 6 per cent.

Payments were to be made at certain times, and all of the purchase price except $100 and interest thereon had been fully paid at the time the suit was instituted. The terms of the agreement are the ones usual in the ordinary short form land contract, and, among other things, complainants covenanted that, upon the fulfillment of its conditions by defendant, by a good and sufficient warranty deed, to convey to him said premises as described. The bill alleges that defendant immediately went into possession of said lot and moved into the house situated thereon, and has since continued in such occupancy. The answer of defendant in the nature of a cross-bill admits the execution of the contract and the payments made, and that complainants claimed at the time to be owners of said lot as described in fee, but denies that they were in possession of the whole of it, or that they ever gave to him, or he ever received from them, such possession; that he never discovered this fact, or that the premises of which he received possession were not the premises described in the contract, until after he had paid $400, principal and interest on the contract, when, in having a survey made, because of a dispute with an adjoining owner relative to the lines of some other lots, it appeared that Mr. Boyd, who owned lot 13 next east of this lot 14, was and had for many years been in possession of the east 23 feet and 2 inches of the same. Defendant notified complainants of this fact January 9, 1909, in

writing, stating that the balance of the purchase price was ready, and that they dispossess Boyd and give him possession. This notice was given before complainants made offer of a deed, and defendant's offer is continued in his answer. He asks for affirmative relief, that complainants be decreed to deed to him all that part of lot 14 of which they have the legal right of possession, and to account to him for over-payment. An answer was filed to the cross-bill and issues were joined. A hearing was had, and a decree granted dismissing the cross-bill and granting complainants relief as prayed. The amount fixed as due to them was $109. In default of payment of this amount lot 14 of block 116 was ordered sold, etc. Defendant on appeal asks for a reversal of this decree.

The record shows without dispute that Mr. Boyd, owner on this block No. 116, next east of lot 14, which is described in the contract, had for more than 20 years occupied 23 feet and 2 inches of said lot according to the recorded plat thereof. It appears that this lot was located in the southwest corner of the block; the plat showing that it was 66 feet fronting on Quarter Line street, and 165 feet deep, with Third street on the west side of it. The accuracy of the survey made by the county surveyor is not disputed. Third street on the plat runs north from Quarter Line street apparently to the river, but the record shows that 132 feet beyond the northwest corner of lot 14 the abrupt bank pitches down to the river 400 feet. Defendant also owns lot 1 of block 116 directly north of lot 14, and fronting 66 feet on Third street which is the only way of ingress or egress to and from lot 1 and the lot next north of it. It appears that at the time the contract between these parties was made there was a fence across Third street, and the land had been at least partly cultivated by complainants' father, who was then owner of lot 14, and but part of this street was used as an alley by the owner of the premises on the west side of it. There was no fence on the west side of lot 14 along Third street. Defendant after he moved in used and cultivated about three rods of

Third street west of lot 14. The barn on this lot was built partly in this street. At the time of making the contract complainants' property, sold as lot 14, according to the recorded plat, apparently extended from the old fence up to which Mr. Boyd occupied, west partly across Third street, and was shown to defendant by one of the complainants, and defendant supposed that this was in fact lot 14, and did not know the difference until the survey was made. The next year after he entered into possession, an ordinance having been passed restraining cattle from running at large, he took down this fence across Third street. These detailed facts are material only as bearing upon the proposition that these premises which defendant viewed and purchased as lot 14 presented the physical appearance of a full-sized lot. The record shows little or no diagreement upon the facts presented.

The first material and undisputed fact is that complainants covenanted to convey to defendant this lot 14, according to the recorded plat thereof, and it also appears undisputed that complainants could not then and could not at the time of their proffer of a warranty deed and demand for the balance claimed due, convey or put defendant in possession of the whole of such lot, for the reason that Boyd, the owner of lot 13 next east, had been for many years in open occupancy of the east $23\frac{1}{6}$ feet of lot 14. As soon as defendant discovered this fact he notified complainants. The record shows that complainants' father knew of this occupancy by Boyd, and recognized the old fence as the line between lots 13 and 14. Defendant contends that complainants are bound by their contract according to its terms; that by reference to the recorded plat it became a part of the contract, and that he is entitled to a conveyance of all the premises contained in the lot purchased according to the plat; that complainants not being in a position to convey to him all of said lot, he is entitled to an accounting, and a repayment of the excess he has overpaid, and a conveyance of such part of said lot as he has actually received from com-

plainants. Complainants contend that defendant is concluded by acquiescence of his grantors for many years, as to the east line, and that by the occupation of the street on the west complainants acquired title to it, and defendant in fact will receive more than 66 feet front on Quarter Line street; that the testimony offered to show where the east line of lot 14, according to the recorded plat, was actually located, was inadmissible, because a court of law and not of equity should determine such question. Defendant is not seeking to disturb any rights acquired by Mr. Boyd by reason of acquiescence by complainants in the line between lots 13 and 14. Admittedly they cannot convey to him title to all of lot 14 according to the recorded plat. He asks that complainants who demand specific performance of this contract on his part, or a forfeiture by foreclosure, shall do that which is equitable.

The question is, Are they entitled to the relief they seek? More than one-third of this lot never belonged to complainants. Whether at the time of entering into the contract complainants believed that they owned it is immaterial. As far as the proposition of law is concerned they might have intended to purchase it, or, if it was incumbered, have expected to remove the incumbrance. They are bound by the terms of their contract. They agreed to sell all of the land described. To grant them the relief asked would operate to allow them to take advantage of their own default. Specific performance of a land contract will not be granted where the vendor is unable to perform, but the purchaser may elect to proceed *pro tanto*, with an abatement in the purchase price for the deficiency. 26 Am. & Eng. Enc. Law (2d Ed.), p. 116; Pomeroy on Contracts (2d Ed.), § 347 *et seq.* It is immaterial what the form of the action may be if the relief sought be identical. This principle is applicable to this case.

Defendant by proper pleadings had asked the court to equitably determine the rights of the parties. He is willing to accept a warranty deed for the portion of the prem-

ises complainants own, but asks that they account to him for overpayment already made. He should have been given the affirmative relief he asked. It is in accord with sound principles of equity, and is supported by reason and authority. The court, having obtained jurisdiction of the subject-matter and the parties, was authorized to finally determine the dispute.

The decree of the circuit court must be reversed, because there is no evidence in the case from which this court can determine the amount which should be deducted from the contract price by reason of complainants' default in title to $23\frac{1}{8}$ feet of this lot, and how much less said premises are worth by reason thereof. The case must be remanded for the purpose of taking testimony upon that question to determine that amount, and also to determine the amount defendant has overpaid, if any, and the interest thereon, and all other interest to which he is entitled, and that thereupon a decree be entered in his favor for a conveyance by warranty deed to him of $42\frac{5}{8}$ feet of said lot, and for a money judgment for the amount to which he is found to be entitled over and above his payments, with interest from August 20, 1909, and that he recover all costs of both courts to be taxed.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.