JAMES S. HOLDEN CO. v. WILLIAM TAIT REALTY CO.

1. SPECIFIC PERFORMANCE — VENDOR AND PURCHASER — IMPERFECT TITLE—PURCHASER'S RIGHTS.

Although the purchaser of land cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, he is generally entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement out of the purchase-money for any deficiency in title, quantity, or quality of the estate.

2. SAME—NOT DECREED WHERE VENDOR HAS NO TITLE.

Where a vendor contracted to convey that which it did not own, and to which it did not afterwards acquire any title, it could not be compelled to specifically perform.

3. SAME—PURCHASER'S REMEDY ACTION AT LAW.

Where a vendor is unable to perform because it has no title to the land contracted to be conveyed, the purchaser's only remedy is by an action at law for damages for breach of the contract.

Appeal from Wayne; Hart (Burton L.), J., presiding. Submitted October 5, 1921. (Docket No. 13.) Decided December 21, 1921.

Bill by the James S. Holden Company against the William Tait Realty Company and others for the specific performance of a land contract. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Lloyd L. Axford* and *Max Hulett,* for plaintiff.

*Prentis, Mulford, Pugh & Fitch,* for defendant William Tait Realty Co.

SHARPE, J. On August 8, 1919, the defendant William Tait Realty Company and the plaintiff entered

On right of vendee to specific performance with abatement from purchase price where vendor is unable to convey a good and unencumbered title, see notes in 24 L. R. A. 763; 10 L. R. A. (N. S.) 117; 38 L. R. A. (N. S.) 1195; L. R. A. 1917F, 597.

into a written contract for the sale by the former to the latter of certain platted lands in the city of Detroit for the sum of $40,000. A down payment of $1,000 was then made, the balance to be paid on delivery of warranty deed and after the furnishing and examination of an abstract of title, but not later than 24 days from the date of the contract. The abstract as finally completed showed the title to the lands to be in the Winnetka Land Company, subject to a mortgage held by John Dubay securing $33,501, and a second mortgage held by the vendor securing $4,300 and certain unpaid taxes and outstanding tax titles. On the day the contract was executed, but subsequent thereto, John Dubay, in consideration of $1,000 then paid to him, agreed to give the Tait company a quitclaim deed of the premises described in his mortgage on payment of $31,888.91, with interest, on or before August 25, 1919. It was stipulated that the $1,000 paid should be forfeited if the additional payment was not made. No subsequent payment was made thereon. On the same day Charles P. Newberry, an official of the Winnetka company, agreed to deliver to Herman C. Rohns a warranty deed of the lands, subject to the two mortgages and to the rights of certain prior contract purchasers, for $2,000. The record shows that the Tait company expected to secure this contract, or the deed to be acquired under it, from Rohns, but there is no evidence that he was acting for the company in the matter.

On October 8, 1919, after plaintiff's attorney had completed his examination of the abstract of title and made report thereon, a conference was held in Mr. Cullen's office and the matter fully discussed. The secretary, assistant secretary and attorney of plaintiff's company, Mr. Tait representing the Tait company and Mr. Newberry representing the Winnetka company, were present. The plaintiff was then pre-

pared to fully perform the contract on its part. The result of the conference is thus stated by Mr. McGann, plaintiff's assistant secretary:

"It developed that the only way we could close was to buy out the thing; everybody wanted the money that they had invested in it, which would bring the property way over what we had agreed to buy it for; and when we saw that was what the situation was, Mr. Axford (plaintiff's attorney) said we wasn't going to get anywhere and we left."

On October 14th, six days later, plaintiff filed the bill of complaint herein, asking for specific performance by the Tait company of its contract to sell. The bill alleges that the Tait company was the owner of the land at the time the contract of sale was entered into by reason of an agreement with the Winnetka company to sell to it. The Winnetka company and John Dubay as mortgagee were also made parties. The prayer for relief asked that the rights of the several defendants might be determined and plaintiff subrogated to any rights in the lands found to be in the Tait company.

On December 12, 1919, the plaintiff procured a warranty deed of the lands from the Winnetka company, paying therefor $1,500. This was made subject to the two mortgages and the taxes assessed for the years 1917, 1918 and 1919.

On May 1, 1920, the plaintiff, by leave of the court, filed a supplemental bill of complaint, setting up the agreement between Dubay and the Tait company and that between Newberry and Rohns (alleging that Rohns was acting as agent for the Tait company in procuring it); its purchase from the Winnetka company; the payment by it of about $2,350 for delinquent taxes, asked that Rohns be made a party defendant, that a determination be made of the respective rights of the parties, that it be allowed the amount paid by

it to the Winnetka company and for taxes, and that specific performance by the Tait company of the contract of sale be decreed. The answers are unimportant, except that Rohns denies he was acting for the Tait company in procuring the agreement from Newberry.

The trial court dismissed the bill, holding that, as the Tait company had no title, specific performance could not be decreed and plaintiff's claim for damages should have been prosecuted on the law side of the court. He offered to so transfer it, but such offer was declined. The plaintiff appeals.

The plaintiff insists that it was entitled to a decree ordering the Tait company to convey whatever interest it had in the lands. Its counsel rely on the rule stated in 36 Cyc. p. 740:

"Although the purchaser cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, he is generally entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement out of the purchase-money for any deficiency in title, quantity, or quality of the estate. This is not making a new contract for the parties, since the vendor is not compelled to convey anything which he did not agree to convey, and the vendee pays for what he gets according to the rate established by the agreement."

This rule is well supported by authorities. Besides those cited in the annotation to the text, we call attention to *Eppstein* v. *Kuhn,* 10 L. R. A. (N. S.) 117 (225 Ill. 115, 80 N. E. 80) ; *Murphy* v. *Hohne,* L. R. A. 1917F, 594 (73 Fla. 803, 74 South. 973), and cases discussed and noted in the annotations thereto. See, also, *Nelson* v. *Gibe,* 162 Mich. 410.

The difficulty in applying this rule to the facts here presented is that the Tait company has not and never had any title to any part of the land contracted to be

conveyed.    This distinction is pointed out by Mr. Justice CAMPBELL in our early case of *Covell* v. *Cole,* 16 Mich. 223, 226.    The plaintiff itself owned the fee at the time of the hearing in the court below.    It took it subject to existing incumbrances.    The relief afforded a vendee when a partial performance only can be decreed, due to the vendor's inability to convey the entire title or the entire description, is by way of abatement of the purchase price to an amount equal to the value of that which the vendor cannot convey.    A court of equity can grant such relief.

The vendor here had no title which he could be ordered to convey.    This fact, while not known to plaintiff at the time the contract was made, was disclosed by the abstract.    The conference in Mr. Cullen's office followed, in the hope that some arrangement might be made between all the parties interested by which the Tait company might secure title and be enabled to perform its contract with plaintiff.    The Tait company, having contracted to convey that which it did not own, and not having afterwards acquired any title thereto, could not be compelled to specifically perform its contract to sell to plaintiff.

The rule is thus stated in Pomeroy on Contracts (Specific Performance) (2d Ed.), § 293:

"The general doctrine is well established, and from the very nature of the case it could not be otherwise that the absolute inability of the defendant to perform his undertaking at all, when called on by the court to do so, prevents a decree against him for specific performance."

See, also, Waterman on Specific Performance, § 422.

Plaintiff, being informed of the Tait company's inability to perform, should not have sought relief by bill for specific performance.    Its only possible form of relief was an action for damages for breach of con-

tract. Such damages being recoverable in a court of law, a suit in equity will not lie therefor.

The decree is affirmed, with costs to the appellees against the plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.