STOLBERG *v.* OAKMAN.

1. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—ABILITY TO PERFORM.

In a suit by the vendee for the specific performance of land contracts for the sale of certain lots, vendor's claim that specific performance should not be decreed because the title of said lots is now in a trust company is without merit, where it appears that under the arrangement with the trust company it agreed to release any lot upon payment of the purchase price.[1]

2. SAME—PRINCIPAL AND AGENT—VALIDITY OF SALE NOT AFFECTED BY FRAUD OF AGENT.

Where plaintiff purchased the lots from her husband as

[1]Specific Performance, 36 Cyc. p. 575.

business manager of defendant in good faith, and paid
him the money, which he was authorized to receive, the
validity of the transaction would not be affected by the
fact, of which she had no notice, that her husband was
embezzling from defendant.[2]

Appeal from Wayne; Collingwood (Charles B.), J.,
presiding.     Submitted October 20, 1925.     (Docket
No. 143.)     Decided December 22, 1925.

Bill by Marion I. Stolberg against Robert Oakman
and another for the specific performance of certain
land contracts.     From a decree for plaintiff, defend-
ants appeal.     Affirmed.

*Joseph S. McDowell,* for plaintiff.

*John L. Austin* (*McClear, Newman, Penniman &
Toy* and *Thomas A. Kenney,* of counsel), for defend-
ants.

SHARPE, J.     Robert Oakman, hereafter called the
defendant, has been a real estate operator in Detroit
for many years.     In 1915, he subdivided a large
acreage into building lots, designated on the plat as
"Oakman's Twelfth and Tuxedo Subdivision."     Lots
17 and 18 fronted on Tuxedo avenue.     On November
29, 1915, Mary MacEachern, of Port Huron, purchased
lot 17 under contract for $700, of which $227 was
paid down, the balance to be paid at the rate of $7
per month, with interest on unpaid balances at 6 per
cent., payable quarterly.     On the same day Edith
M. Weyers, also of Port Huron, purchased lot 18
under a similar contract, except that the down pay-
ment made was $247.     No further payments were
made by these purchasers.

In 1916, plaintiff's husband, Ernest W. Stolberg,
entered the employ of Oakman in the real estate busi-
ness.     Soon after, he was regarded as business man-
ager, and signed his name as such.     Frank O. Ronk,

[2]Husband and Wife, 30 C. J. § 248.

at one time defendant's private secretary, testified that Stolberg—

"had charge of the issuing of the contracts and the giving out of property to salesmen when the sales manager was not directly there, and the following up of collections and all of the work that was embraced within the contract scope of the office, I mean the sales contract."

While he did not always prepare the contracts, they were submitted to him for approval before delivery to purchasers.

Stolberg's wife, the plaintiff, had been engaged in buying and selling real estate for several years. She had used her own money, and had been handling the business herself. She had made purchases from the defendant. Her only joint venture with her husband was in the purchase of a home, for which he had made part payment. She had expressed a desire to him to purchase some frontage on Tuxedo avenue. Mary MacEachern, then married to a man named Baird, wanted to sell her lot. Stolberg called his wife on the telephone, and communicated this fact to her. She said she wanted more than one lot, but finally consented to take it. Soon after, Stolberg, as business manager for defendant, wrote Miss Weyers about selling her lot, and she was willing to do so. The plaintiff gave a check to her husband for the price of each lot as agreed upon with the vendees and sufficient in addition thereto to pay to the defendant the amounts then due on the contracts. The contracts were surrendered and the amounts due the vendees paid to them by Stolberg. The balance of the moneys paid by plaintiff was retained by Stolberg. He did not deposit it to defendant's account as his duty required him to do. New contracts were then made out to the plaintiff on blank forms kept in the office which had been signed by defendant and his wife, dated as of the dates of the original con-

tracts, and similar in every respect thereto, except the name of the purchaser.    These transactions occurred in April and May, 1919.

In the summer of 1921 it was discovered that Stolberg had been embezzling money from Oakman for several years.    The amount thereof was about $5,000. He was discharged and criminal charges preferred against him.    A settlement was finally reached, the plaintiff joining in a mortgage with her husband on their home to raise the sum agreed upon.    At the time of this settlement, defendant refused to accept from plaintiff the amount then due on her contracts. He, however, offered to credit on her husband's indebtedness the amounts which had actually been paid by her to the vendees in the contracts.

It appears that in April, 1920, notices of forfeiture of the land contracts, signed by defendant, had been sent by registered letter to Mrs. Baird and Miss Weyers by some of the employees in the office, without any knowledge on the part of Stolberg.    Proceedings to recover possession were taken by defendant, and judgment therein rendered on December 7, 1922. Writs of restitution were issued in January, 1923.    Of these proceedings the plaintiff had no notice.

It also appears that on April 14, 1922, the defendant entered into a "Declaration of Trust and Security Agreement" with the Union Trust Company to secure a large bond issue, and in connection with which these and many other lots in the subdivision were conveyed to that company.

Soon after the issue of the writs of restitution, the plaintiff made a tender to the defendant and also to the trust company of the balance due under her contracts, and demanded the execution of deeds to her of the two lots.    This demand was refused, and she filed the bill of complaint herein to compel specific performance.    The trial court rendered a decree in her favor, from which defendant appeals.

1. Defendant insists that, as the title to the real estate is, and was at the time the bill was filed, in the trust company, specific performance cannot be decreed.    It does not appear that this claim was made in the trial court.    There is no reference to it in the opinion filed.    However that may be, it is clear to us that upon this record it is without merit.    In that part of defendant's answer in the nature of a cross-bill, he sets up the proceedings taken to recover possession, and avers "that said property is now owned by defendants, subject to a deed of trust held by the Union Trust Company."    The proceedings before the commissioner were taken in defendant's name after the trust deed had been executed.    Henry Weigart, private secretary and office manager of Mr. Oakman, testified:

"We have an arrangement with the Union Trust Company for releases of all lots that are outstanding on contract under this trust deed.

"Q. And that arrangement—what does that arrangement provide?    That upon the payment of the purchase price, at your request the lots will be released?

"A. Upon payment of the purchase price the lots will be released.

"Q. And the Union Trust Company will release upon your request and upon payment of the price mentioned in the contract?

"A. Yes, sir."

It is apparent that defendant can readily procure a release of these lots from the trust company, and that he may then make conveyance pursuant to the decree.

2. The more serious question (that discussed at length by the trial court) was whether plaintiff's husband had been guilty of fraudulent conduct in connection with the delivery of these contracts, and whether plaintiff is herself chargeable therewith.    In this day and age, it is not unusual for married women, who have means of their own, to engage in business and conduct their affairs without assistance, or even

advice, from their husbands. We have read the record with care, and find nothing in it to even suggest any improper action on the part of the plaintiff in connection with the transaction. We are satisfied that she dealt with her husband as business manager of the defendant, just as she would have dealt with any other person who might have been employed as he was. She was in no way favored in the transaction. Her neglect in making the monthly payments after her purchase is explained by her. She did not want to be bothered over the payments of such small sums monthly, but was ready and able to meet a number of payments whenever demand was made therefor.

It is urged that Stolberg exceeded his authority as agent of defendant, and that the duty rested on plaintiff to ascertain the extent thereof. We are unable to find that he did any act in dealing with plaintiff which he had not authority to do. If dealing with a stranger, he would have pursued the same course which was here followed. Two customers of the office wanted to dispose of the lots they had purchased. He arranged for the surrender of their contracts, and issued new ones to a person who desired to purchase. Mr. Weigart testified that this "has been done in a number of cases." He had a right to accept payment for defendant of the amount due on the contracts at the time the new sale was made. There is dispute as to whether this money was included in the settlement. There can, we think, be no question but that it was paid by plaintiff in good faith, and in the ordinary course of business, and at a time when Stolberg was acting as business manager for defendant and authorized to receive it.

The decree is affirmed, with costs to plaintiff.

MCDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.