## BORKOWSKI *v.* KOLODZIEJSKI.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—SALE OF REALTY.

Instrument presented as land contract in suit for specific perform-ance must be taken as it is and if the parties are named and all of them signed it, the property is described, the price and terms of payment and time of performance are all definitely fixed, the instrument will satisfy the statute of frauds (CL 1948, § 566.108).

2. SAME—SIGNATURE OF VENDOR.

Appending of defendant vendor's signature at lower portion of a printed form of offer to sell real estate and acceptance, whereby he gave authenticity to the instrument complied with the statute of frauds and made the agreement a valid one (CL 1948, § 566.108).

3. SPECIFIC PERFORMANCE—LAND CONTRACT—LESS THAN FEE TITLE—ABATEMENT OF PRICE.

A purchaser is entitled to specific performance of a vendor's agree-ment to sell vendor's interest in property at rate of price named in the written instrument, the purchaser being entitled to have

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Statute of Frauds § 313 *et seq.*
[2] 49 Am Jur, Statute of Frauds §§ 379, 380.
[3] 49 Am Jur, Specific Performance § 105 *et seq.*

an abatement in the price for any deficiency in title, quantity or quality of the estate, such result not constituting a new contract for the parties, since the vendor is not compelled to convey anything which he did not agree to convey and the purchaser pays for what he insists upon getting at the rate established by the agreement.

4. SAME—ABATEMENT OF PRICE.

A vendor who appears to have represented to own the entire interest in property may be compelled to specifically perform contract for sale of such interest in the premises as he may own at the rate provided for in the agreement to sell.

5. VENDOR AND PURCHASER—NOTICE OF DEFENDANT'S INTEREST.

Delivery to plaintiff of an abstract of title to realty, showing that defendant had only a half interest therein, *held,* not of itself notice that defendant's interest was so limited under the circumstances.

6. SPECIFIC PERFORMANCE—SUFFICIENCY OF TENDER.

Offer in bill of complaint to perform plaintiff's part of agreement relative to purchase of vacant lots *held,* a sufficient tender to enable him to maintain a suit for specific performance.

7. APPEAL AND ERROR—SPECIFIC PERFORMANCE—DE NOVO REVIEW.

The Supreme Court tries a suit for specific performance of a land contract *de novo.*

Appeal from Macomb; Spier (James E.), J. Submitted January 10, 1952. (Docket No. 24, Calendar No. 45,099.) Decided March 6, 1952.

Bill by John Borkowski against Walter Kolodziejski for specific performance of an agreement to sell land. Decree for plaintiff. Defendant appeals. Affirmed.

*Carroll & Gallagher,* for plaintiff.

*Marx, Levi, Thill & Wiseman,* for defendant.

REID, J. Plaintiff filed the bill of complaint in this case for specific performance of a written agreement

to sell real estate. From a decree for plaintiff, defendant appeals.

Plaintiff has been for 11 years in the supermarket grocery and meat business in Warren township, Macomb county, on the east side of Van Dyke avenue. Plaintiff owns lots No 6, 7, 8 and 9 on Kroll-Van Dyke subdivision, his store being on lot No 8 and a part of lot No 9. Lots No 1, 2, 3, 4 and 5 are between his property and the corner of Fisher street. The agreement in question has to do with lots No 3, 4 and 5 on the north of and next adjacent to plaintiff's property. Plaintiff desired to buy lots No 3, 4 and 5 for parking lot purposes to be used in connection with his supermarket. There had been for some months a "For Sale" sign on the lots he desired to buy, with a telephone number on the sign.

On August 19, 1944, plaintiff called the telephone number that was indicated on the sign. From the party responding, he obtained an address which proved to be the residence number of defendant, and plaintiff went to that address. Besides defendant there were then living at that house, defendant's mother, his half-brother Adam William Sumeracki, and defendant's 2 sisters, Mrs. Otylia Bebeau and Eleanor (afterwards Mrs. Eleanor Lesjak), all of whom were at home except Eleanor, when plaintiff arrived. Plaintiff made his errand known. There was much discussion as to price. Defendant held out for $6,000 and plaintiff wanted to pay only $5,500; but no discussion appears to have occurred over defendant's willingness to sell, though the testimony is conflicting as to what was said in the conversation. At last, defendant agreed to sell to plaintiff lots No 3, 4 and 5 for $5,750.

Defendant requested his sister Otylia to fill in by typewriting, the blank spaces of a printed form (which he seems to have had on hand) of offer to sell and acceptance. She proceeded to prepare the

agreement, though not qualified as a scrivener. Plaintiff signed the agreement, exhibit No 3, a copy of which is attached to the bill of complaint. Defendant also signed on a line in a rectangular space in the blank, called a "box," designed for acceptance and acceptance signatures and the signatures of witnesses to the acceptance signatures. In this "box" were printed words of acceptance and also a clause requiring payment of a real estate dealer's commission. Otylia crossed out the clause providing for payment of real estate dealer's commission, evidently because no real estate dealer had been employed. In crossing out that clause, Otylia also crossed out words of acceptance, but left the words in capital letters at the top of the box,

"ACCEPTANCE

"To the Above Named Purchaser and Broker:" In the bottom of the box, below the lines indicating crossing out drawn by Otylia, defendant signed his name with "L.S." after it, and Otylia and defendant's half-brother Adam Sumeracki signed as witnesses to the signature of defendant, who then gave the agreement with his name thus signed to it, to plaintiff and also gave plaintiff the abstract of title, which defendant had already caused to be brought up to August 12, 1944. Plaintiff gave to defendant the $250 specified in the agreement as the down payment. What seems to have been intended as a duplicate of the agreement was also drawn, but the numbers of the lots and other matters are left out, the same price however being inserted, which intended duplicate was signed by plaintiff but not by the de-defendant, and was left with the defendant.

Plaintiff made practically immediate arrangements for filling in the lots which were low and sometimes covered with water, which filling was done during the ensuing week while plaintiff was absent in

Pennsylvania in attendance on his father's funeral. The total cost of the filling was about $1,000.

About August 25, 1944, and after his return from the funeral, plaintiff was informed that defendant had repudiated the agreement and had deeded the lots in question to Adam William Sumeracki, defendant's half-brother, who had witnessed the agreement, exhibit No 3, and further, found out that Sumeracki had deeded the lots to Joseph Ochylski, defendant's uncle. Plaintiff claims both deeds were without consideration and with notice of plaintiff's rights.

Plaintiff claims that thereupon he consulted with his attorney, and then learned for the first time that defendant owned only a half interest in the lots.

Defendant claims that he told plaintiff the same evening that the agreement was signed, that his sister Eleanor owned a half interest in the lots, but failed to give, though questioned on that subject, any plausible reason for his not waiting nor suggesting to plaintiff that he wait for Eleanor's return. She was then living in the same house where the agreement was signed, was working at Cunningham's, and would be through with her work at least by 11:30 p.m. Plaintiff and defendant were not through with the negotiations until 11:30 or close to midnight. Otylia testified, "There was no discussion about waiting for my sister to come home."

Defendant admits that he agreed to sell for $5,750 as the full price after "quite a bit of discussion about price all evening long," that he signed exhibit No 3, the agreement in question, and gave it to plaintiff and gave plaintiff the abstract. The name of Eleanor is not in the agreement as prepared by Otylia, but defendant's name is mentioned as the agreed recipient of the down payment of $250. Judging defendant by his actions rather than by his testimony, we conclude that defendant acted in

ignorance or misrecollection of his rights, or inten-- tionally deceived plaintiff into thinking that he, defendant, was the sole owner of the lots.

Upon discovering that defendant had only a half interest, plaintiff filed his bill of complaint for specific performance and offered to comply with the agreement as the court might find it necessary for him to do.

Defendant claims that crossing out the words in printing in the acceptance clause, left the writing in such condition that there was no contract. Defendant testified that he signed the contract and gave it to plaintiff with his, defendant's, signature on it. He does not pretend that he signed for any other purpose than to bind himself as a party to the agreement.

We must take the instrument as it is. See *Stout v. Hallsted*, 239 Mich 81, in which case we say at pages 82, 83:

"The form used was inappropriate to the transaction and the blanks in it were inaptly filled out. For example, the consideration and terms of payment are found where the description should be and the description of the property where the consideration should be. There are incongruous provisions in it. Some of the blanks are not filled out, making some of its provisions meaningless. * * * The parties are named and all of them signed it; the property is described, the price, the terms of payment, the time of performance are all definitely fixed. Some of them are found in inappropriate places but they are found within the four corners of the instrument. We are persuaded that it satisfies the statute of frauds and that it was binding on the parties, all of whom signed it."

"The writing of his name at the top, in the body, or at the bottom of the instrument constitutes a sufficient signing or signature if it is written for the pur-

pose of giving authenticity to the instrument." 49 Am Jur, p 681.

We must conclude, in view of all the circumstances, that defendant signed the agreement in question, exhibit No 3, as an acceptance of its terms. The agreement complies with the requirements of the statute of frauds* and is a valid agreement.

Defendant claims that equity cannot compel him to convey his half interest on being paid one half of the full purchase price. This claim we find untenable under our previous decisions.

In *James S. Holden Co.* v. *William Tait Realty Co.,* 216 Mich 633, we say at page 636:

"The plaintiff insists that it was entitled to a decree ordering the Tait company to convey whatever interest it had in the lands. Its counsel rely on the rule stated in 36 Cyc, p 740:

" 'Although the purchaser cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, he is generally entitled to have the contract specifically performed as far as the vendor is able, and to have an abatement out of the purchase-money for any deficiency in title, quantity, or quality of the estate. This is not making a new contract for the parties, since the vendor is not compelled to convey anything which he did not agree to convey, and the vendee pays for what he gets according to the rate established by the agreement.'

"This rule is well supported by authorities. Besides those cited in the annotation to the text, we call attention to *Eppstein* v. *Kuhn,* 10 LRA NS 117 (225 Ill 115, 80 NE 80); *Murphy* v. *Hohne,* LRA 1917F, 594 (73 Fla 803, 74 So 973), and cases discussed and noted in the annotations thereto. See, also, *Nelson* v. *Gibe,* 162 Mich 410."

The above citation from the *Holden Case* also disposes of a further claim of defendant in this case

---

* CL 1948, § 566.108 (Stat Ann § 26.908).—REPORTER.

that the court by the decree appealed from, made a new contract for the parties.

Defendant further claims that delivery to plaintiff of the abstract showing that defendant had only a half interest, was notice to plaintiff of the deficiency of defendant's title. We find that it would be inequitable to require of plaintiff with his apparently scant knowledge of written instruments, to answer to the test of equalling a well-experienced and qualified attorney in unravelling the intricacies of an abstract and obtaining therefrom a fair understanding of the situation of the title to real estate. See *Goodrich* v. *Smith,* 87 Mich 1, at pages 10, 11.

Plaintiff testified that he was not told about the deficiency of title. It seems probable that he did not know about the deficiency at the time the agreement was prepared and signed. The matter would not have been closed on the evening of the signing of the agreement in the manner in which it was closed, if plaintiff had been told that defendant had only a half interest in the title.

The plaintiff offered in his bill of complaint to perform his part of the agreement. For the sufficiency of such tender, see *Stauch* v. *Daniels,* 240 Mich 295, and *James S. Holden Co.* v. *William Tait Realty Co., supra.*

The trial judge found that the written agreement, exhibit No 3, was made and entered into by the parties; that it was signed by both parties; and that in reliance upon it, plaintiff took possession and made improvements; that plaintiff was not aware that defendant owned only a half interest until informed of that fact by his attorney after the attorney had examined the abstract; that there was no reason why the defendant should not be required to comply with his agreement so far as he is able so to do, and required defendant to convey to plaintiff his half in-

terest upon being paid one half of the agreed purchase price.

We try the case *de novo,* but come to the same conclusion as that reached by the trial court. We also find the tender sufficient. The decree for plaintiff is affirmed. Costs to plaintiff.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.