FIELDS *v.* KORN.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF ACCEPTANCE OF OFFER—TITLE.

The acceptance in writing of a written offer to purchase outright title in fee was insufficient under the statute of frauds, where the acceptance was signed by the holders of an undivided 1/2 interest only, the contract being void (CL 1948, § 566.108).

2. VENDOR AND PURCHASER—WITHDRAWAL OF OFFER—RESTITUTION.

An offeror may properly withdraw his written offer to purchase real estate prior to the written acceptance of the offer by all parties necessary to convey title, and upon such withdrawal is entitled to restitution of what had been paid.

KAVANAGH and SOURIS, JJ., dissenting.

Appeal from Wayne; Bowles (George E.), J. Submitted October 12, 1961. (Docket No. 64, Calendar No. 48,995.) Decided March 19, 1962.

Assumpsit by Lorena Fields and Ernest Fields against Monte Korn and Eleanor Korn for return of their deposit made with offer to purchase real estate. Judgments for plaintiffs in common pleas and circuit courts. Defendants appeal. Affirmed.

*Jessie P. Slaton,* for plaintiffs.

*Pearl & Korn,* for defendants.

BLACK, J. Through a realtor, plaintiffs offered in writing to buy "a two-family flat" situated at

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur, Statute of Frauds § 383 *et seq.*
[2] 55 Am Jur, Vendor and Purchaser § 20.

1931 Leslie, in Detroit. With the offer they paid $500 earnest money to defendants Korn. They sued later—in Detroit common pleas—to recover the deposit and received judgment therefor against such defendants. On appeal to circuit, a like judgment against defendants Korn was entered. This appeal followed.

The offer to purchase, signed by plaintiffs under date of September 30, 1958, was accepted in writing by defendants Korn only. It turned out that the flat was owned in fact and of record by defendants Korn, an undivided 1/2 interest, and by original but subsequently dismissed defendants Bernard A. Pearl and Mary Pearl, an undivided 1/2 interest. Plaintiffs thereupon, by letter to the realtor dated November 7, 1958, withdrew their offer and demanded return of the paid earnest money. Later, after commencement of suit, the flat was sold by the Korns and the Pearls to third parties.

Since plaintiffs offered to buy outright title in fee, no more and no less, the acceptance in writing by defendants Korn only was insufficient under the statute of frauds. When plaintiffs withdrew the offer, as was their right in the absence of previous acceptance in writing by all 4 parties to be charged, they were entitled to restitution of what they had paid. Judge Bowles correctly held that the rights and duties of the parties were controlled by *Adler* v. *Katus,* 190 Mich 86, and the reasoning of cases cited therein, notably that of Justices CAMPBELL and COOLEY respectively, written in *Scott* v. *Bush,* 26 Mich 418 (12 Am Rep 311), and *Dickinson* v. *Wright,* 56 Mich 42.

This is not an action to recover an allegedly earned broker's commission. It is not a suit for specific performance of an agreement to sell real estate. It is simple assumpsit to recover money paid on a contract which the applicable section of the statute

of frauds says "shall be void" (CL 1948, § 566.108 [Stat Ann 1953 Rev § 26.908]) for want of required signature of the parties to be charged. The parties to be charged were the 4 owners of the fee of that which plaintiffs offered to buy. The written acceptance of 2 of the 4 only left the offer unaccepted and subject to withdrawal. At no time, between original negotiations and ultimate sale of the property (by the 4 owners to third parties) could plaintiffs have asked for or obtained specific performance, and no question or claim of part performance is involved. Thus our task, as Mr. Justice Holmes observed in his most notable dissent (*Northern Securities Co.* v. *United States,* 193 US 197, 401 [24 S Ct 436, 48 L ed 679]), "is to find the meaning of some not very difficult words"—"to read English intelligently."

This contract was, as the statute says, "void." That word "void" is the mandate of the statute. It means the ultimate of legal nullity. The English is plain. So is the verity of the lower court's judgment.

I would affirm with costs to plaintiffs.

DETHMERS, C. J., and CARR, KELLY, and OTIS M. SMITH, JJ., concurred with BLACK, J.

SOURIS, J. (*dissenting*). It is suggested that the statute of frauds, CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908), makes void a contract to sell real estate when signed by fewer than all joint owners, citing *Adler* v. *Katus,* 190 Mich 86, as authority. *Adler* v. *Katus* does not support the general statement for which it is cited nor does the statement properly reflect the law.

The statute makes a contract to sell real estate void only if it is not signed (1) by the party by whom the sale is to be made, or (2) by someone authorized in writing to sign for him. In *Adler* v.

*Katus,* this Court was concerned only with the second alternative. There, a part owner of real estate signed a contract to sell not only in his own name, but also in the name of his co-owner. The contract provided, and the parties contemplated, that the sale of the property would be made by the joint owners. In the absence of written authority from the co-owner to so act in his behalf, this Court properly held the contract void for failure to comply with the requirements of the statute of frauds. We did not say in that case, as it is suggested we did, nor have we said in any other case, that one joint owner of real estate may not bind himself, and only himself, to convey a marketable fee at a future date.

That is precisely what the Korns did. They contracted to convey to plaintiffs a marketable fee at a later date. Whether they then had fee title, recorded or unrecorded, is of no consequence in determining the validity of their executory contract to sell insofar as the statute of frauds is concerned. As the contract was written, they were the ones by whom the sale was to be made and the requirements of the statute were met by their execution of the contract in their own names alone.

We have frequently recognized the validity of such contracts by decreeing their specific performance or by awarding damages for their breach. Indeed, in *Adler* v. *Katus* it was argued that the agreement was binding at least upon the joint owner who actually signed it, but this Court refused to so hold only because to do so would be to make a contract for the parties they never made for themselves:

"If a promise to convey the land is to be implied from this memorandum, it is a promise which purports to have been made by Peter Katus and Charles J. Katus, jointly, and not by Peter Katus alone. It acknowledges the receipt of the money by both, and implies a joint conveyance, if any. Peter Katus does

not agree to procure a conveyance from Charles, but the import of the writing is that Charles himself agrees to convey his interest. Should we construe this as a contract by Peter alone, as vendor, we would be making for the parties a contract they never made for themselves. So far as the memorandum shows, the plaintiff did not intend one which could not be specifically performed without the subsequent consent of Charles, nor did Peter intend to make one by which he bound himself, at his peril, to obtain a conveyance from Charles. The agreement being void as to Charles, and not severable, is entirely void. This case is ruled by *Kooman* v. *De Jonqe,* 186 Mich 292.

"The contract being void, inasmuch as the memorandum was not signed by Charles, nor by anyone authorized in writing to sign for him, plaintiff was not bound."

See, also, *Dikeman* v. *Arnold,* 78 Mich 455, 469, 470; *Rogers* v. *Eaton,* 181 Mich 620, 622; *Brin* v. *Michalski,* 188 Mich 400, 406; *James S. Holden Co.* v. *William Tait Realty Co.,* 216 Mich 633, 636; *Stolberg* v. *Oakman,* 233 Mich 92, 96; *Litzau* v. *Shimkewich,* 286 Mich 92, 96; *Borkowski* v. *Kolodziejski,* 332 Mich 589, 595; *Brin* v. *Spruance,* 348 Mich 29, 34; and *Max Broock, Inc.,* v. *Walker,* 349 Mich 63, 66.

Had defendants refused or failed to perform on the date for closing provided in the contract, plaintiffs would have been entitled to institute suit for specific performance by decree in equity or for damages by judgment at law. The question remains, however, whether plaintiffs could cancel the contract, upon their discovery that the sellers did not have fee title, and sue at law for recovery of the $500 deposit paid by them at execution of the contract. The answer to this question has nothing whatever to do with the statute of frauds.

The contract provided for consummation of the sale within 10 days after delivery of an abstract of

title or, if an objection was made to title and a title insurance policy was issued guaranteeing title in condition required for performance, within 10 days after delivery of such policy. An abstract of title was submitted to plaintiffs. Plaintiffs claim on appeal, and defendants deny, that they objected to defendants' title because the abstract disclosed they owned only an undivided 1/2 interest in the property. The trouble with plaintiffs' position is that there was no evidence offered below to support their present claim that they gave defendants notice of their objection to title before starting suit to recover their $500 deposit. In their answer to plaintiffs' declaration, defendants alleged their continuing willingness and ability to convey marketable title. From their pleadings it appears that the property was subsequently sold to another party about 4 months after this suit was started.

Because of plaintiffs' failure to object to title as disclosed by the abstract in such manner that defendants could either correct whatever defect appeared or procure a title insurance policy as provided for by the express provisions of the contract, I do not believe plaintiffs had valid cause to rescind their contract to purchase. See *Worley* v. *McCarty,* 354 Mich 599.

I would reverse and award costs to defendants.

KAVANAGH, J., concurred with SOURIS, J.

ADAMS, J., took no part in the decision of this case.