MAX BROOCK, INC., *v.* WALKER.

1. BROKERS—EXCLUSIVE LISTING AGREEMENT—DISCLOSURE AS TO TITLE.
    A real-estate broker's listing contract giving the broker exclusive selling rights of and marketable title to land described for a stated period, is enforceable by the broker who duly performs thereunder regardless of disclosure at the time of signing the agreement that the party obligating himself for payment of the commission is not the outright owner of the land contemplated for sale.

2. VENDOR AND PURCHASER—CONTRACT TO SELL LAND ONE DOES NOT OWN—BREACH OF CONTRACT—DEFENSES.
    The fact that one did not have legal title to land at time he made a contract to sell it, and could not procure it afterwards, is no defense to an action for breach of the contract to sell.

3. BROKERS—LISTING AGREEMENT.
    Broker's listing agreement was not indefinite and incomplete, where it described the land involved and defendant agreed to pay plaintiff broker a stipulated commission upon a stated price and ·to furnish the purchaser a marketable title and abstract or title insurance policy and gave the broker an exclusive right to sell for a stated period.

4. SAME—LISTING AGREEMENT—PERFORMANCE.
    Plaintiff real-estate broker *held*, to have alleged and proved that it had produced a purchaser ready, able and willing to purchase property within the terms of its exclusive listing agreement.

Appeal from Oakland; Doty (Frank L.), J. Submitted June 5, 1957. (Docket No. 22, Calendar No. 47,185.) Decided July 31, 1957.

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Brokers § 148.
[2] 55 Am Jur, Vendor and Purchaser § 561.

Assumpsit by Max Broock, Inc., a Michigan corporation, against Charles R. Walker for real-estate commission stipulated in listing, upon procuring prospective purchaser. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Howlett, Hartman & Beier* (*William B. Hartman*, of counsel), for plaintiff.

*Benjamin Tauber*, for defendant.

This suit was brought to recover an allegedly earned real-estate broker's commission. Plaintiff alleged and proved that on February 7, 1955, "The parties hereto entered into a written listing contract, by the terms of which the defendant agreed to sell (certain premises, describing them, for the sum of $87,500), and to pay to the plaintiff a commission of 5% on the sale price, said listing agreement to extend to the 1st day of May, A.D. 1955." Plaintiff further alleged and proved that on February 28, 1955, it duly produced a purchaser ready, willing and able to purchase according to the agreed terms. Defendant alleged and proved that the listed premises were owned by himself and wife, and that he definitely informed plaintiff of that fact when the instrument sued upon was executed. The case accordingly turns on defensive worth of the fact of entirety ownership, plaintiff's timely knowledge thereof, and absence of the wife's signature from the instrument in suit. A copy of the instrument appears at margin.*

---

* "Birmingham, Michigan Feb. 7, 1955.
"To Max Broock, Inc., Realtors
    Birmingham, Michigan.
    "In consideration of your agreement to use your best efforts to find a purchaser for the property described on the reverse side hereof, the undersigned, warranting themselves to be the sole owners of said property, hereby grants you the exclusive right and privilege to sell said property at the price and terms which are also stated on the

The case was tried to the court, without a jury, and resulted in judgment for defendant. Plaintiff reviews and insists that the trial judge "erred in holding that a listing contract lacking the signature of the owner's wife was unenforceable where the broker knew of the marriage."

BLACK, J. (*after stating the facts*). The question before us is whether the rule of *Dikeman* v. *Arnold,* 78 Mich 455, 469, 470, supported by the assembly of authorities shown in *Lamberts* v. *Lemley,* 314 Mich 417, sustains plaintiff's claim that the covenant for conveyance of a marketable title as contained in this listing contract serves to unsettle defendant's reliance on *Casey* v. *Hetherington,* 220 Mich 176; *Koffman* v. *Pack,* 224 Mich 102; and *Kostan* v. *Glasier,* 337 Mich 287. We hold that it does and, to set this recurrent issue at rest, affirm that a listing contract, in form as here declared upon, is enforceable—as between the parties on due performance by the broker—regardless of disclosure at the time of signing that the party obligating himself for payment is not

reverse side hereof or at any other prices or terms which the undersigned may accept.

"If said property is sold by you, by myself, or any other person on or before the expiration date hereof to any person whomsoever, or if sold within 90 days thereafter to anyone to whom you have shown the property or with whom you have had discussions before the expiration date hereof, the undersigned agrees to pay you in cash a commission of 5% of the sale price $87,500. The undersigned agrees to furnish purchaser with a marketable title; an abstract or fee title insurance policy in the amount of sale price, certified to date of sale, and to consummate a sale upon the terms aforesaid. This agreement is effective from the date hereof to May 1, 1955.

"Copy hereof received.

"Undersigned will give possession within ........ days from date of sale.

/s/ CHARLES R. WALKER

"Accepted upon the terms aforesaid
MAX BROOCK, INC.
By /s/ JOHN GAFILL.

"Lots 29, 30, 31, 32 and 33 of Assessor's Plat No 29, City of Birmingham.

$87,500"

outright owner of the land contemplated for sale. This simply reaffirms *Dikeman's* rule, quoted as follows (pages 469, 470 of report):

"We think the contract was good between Arnold and the plaintiffs. He knew when he made it that he could not perform it without the signature of his wife to the deed. He, in effect, bound himself to procure such signature. It in nowise differs in this respect from a contract to sell lands which one does not own at the time he makes such contract. The fact that one did not have the legal title at the time he made the contract, and could not procure it afterwards, has never been recognized as a legal defense to an action for breach of the contract."

Other questions raised by defendant in support of the judgment below are deemed of no merit. The first is that the listing contract as sued upon is indefinite and incomplete and hence void under the statute of frauds.* The contract itself negates such contention. The second is that plaintiff did not allege and prove that the produced purchaser was able, as well as ready and willing, to purchase according to the stipulated terms. With regard to this second contention, due amendment of the declaration was allowed and the fact of the produced purchaser's ability to acquire was attested by open court stipulation.

Reversed and remanded for entry of judgment in favor of plaintiff. Costs to plaintiff.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Kelly, and Carr, JJ., concurred.

* CL 1948, § 566.132 (Stat Ann 1953 Rev § 26.922).—Reporter.