Argued December 3, 1970, affirmed February 24, 1971

# BROWN, *Appellant, v.* GRIMM ET UX, *Respondents.*

481 P2d 63

*Glenn H. Prohaska,* Portland, argued the cause for appellant. With him on the briefs were Carlton R. Reiter, and Reiter, Day, Wall & Bricker, Portland.

*Frederick A. Anderson,* Tigard, argued the cause for respondents. With him on the brief were Anderson & Dittman, Tigard.

Before O'CONNELL,* Chief Justice, and DENECKE, TONGUE, and BRYSON, Justices.

BRYSON, J.

This is an action at law by plaintiff, a real estate broker, against defendants, husband and wife, to recover a broker's commission in the amount of $2,000 and attorney fees, based on a Real Estate Broker's Employment Contract signed by defendants and R. Timmins, a real estate saleswoman employed by plaintiff. The commission is claimed to have been earned by plaintiff's procuring, through Timmins, a purchaser for defendants' property listed with plaintiff under an exclusive listing agreement.

Defendants denied the allegations of plaintiff's complaint and affirmatively alleged fraudulent misrepresentation and a breach of fiduciary duties on the part of plaintiff. The case was tried before the court without a jury. Plaintiff appeals from the judgment in favor of the defendants.

---

* O'Connell, C.J., did not participate in the decision of this case.

The relevant parts of the Real Estate Broker's Employment Contract, on which this action is based, are as follows:

"For value received, you hereby are employed to sell or exchange the property described hereon at the selling price and on the terms noted. [The selling price appears as "$20,000 *net*"; the terms appear as "cash"]. * * * In the event you * * * shall find a buyer ready and willing to enter into a deal for said price and terms * * * I hereby agree to pay you in cash for your services a commission equal in amount to 10% of the selling price * * * This agreement expires at midnight on November 10, 1968 but I further allow you a reasonable time thereafter to close any deal on which earnest money is then deposited * * *."

The plaintiff's first assignment of error is that "the court erred in failing to find that plaintiff was entitled to a real estate broker's commission," contending that a real estate broker earns a commission when he places the seller and buyer together and an enforceable contract of sale is executed, relying upon *Harris v. Coomler*, 250 Or 594, 443 P2d 637 (1968); *Killam v. Tenney*, 229 Or 134, 366 P2d 739 (1961); and *DeHarpport v. Green*, 215 Or 281, 333 P2d 900 (1959).

The above employment contract provides:

"* * * In the event you * * * shall find a buyer ready and willing to enter into a deal for said price and terms * * * I hereby agree to pay you in cash * * * a commission equal in amount to 10% of said selling price * * *."

In *Martin v. Clinton*, 239 Or 541, 542, 398 P2d 742 (1965), this court held:

"* * * * *

"1. Under a written contract executed by the parties, defendant agreed to pay plaintiff a com-

mission for finding a buyer 'ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept.' We construe this language as an agreement to procure a purchaser ready, willing and *able* to purchase the property offered for sale."

The official Earnest Money Agreement which plaintiff had defendants and the prospective purchaser, Guillory, execute, provided: "Purchaser to pay cash at closing. This offer is subject to purchaser [Guillory] obtaining zone change, adequate financing and building permits and sewer permits on proposed new construction."

The record in this case is virtually barren of any evidence that the purported purchaser, Guillory, was either able or willing to pay the defendants $22,000 cash for their property during the life of the Broker's Employment Contract. The evidence indicates that Guillory was not willing to pay until January 1969 at the earliest. There was no evidence offered of his financial ability to pay, and Guillory testified that he had obtained only verbal interest in financing the proposed transaction that the defendants' property was to have become part of.

In *DeHarpport v. Green*, 215 Or 281, 284, 333 P2d 900, 902 (1959), this court held:

"\* \* \* \* \*.

"Ability to purchase is not shown when a proposed purchaser is depending upon third parties who are in nowise shown to be bound or willing to be bound to furnish the money for the purpose of making the purchase. [Citing cases]"

There was no request for special findings of fact and

the court entered the following general Findings of Fact and Conclusions of Law:

"1. The plaintiff as the broker and agent of defendants failed to prove by a preponderance of the evidence that the plaintiff had discharged her fiduciary duties to the defendants to entitle plaintiff to recover a broker's commission from the defendants;

"2. That the evidence adduced in this case preponderates in favor of the defendants and against the plaintiff, and defendants have no duty or obligation to the plaintiff by reason of any relationship between the parties.

"Based on the foregoing Findings of Fact, the court makes its Conclusions of Law

"1. That the plaintiff's complaint should be dismissed;

"2. That defendants are entitled to judgment against the plaintiff for costs and disbursements herein."

and thereafter entered judgment accordingly. There was sufficient evidence to support the foregoing Findings of Fact and Conclusions of Law.

In the recent case of *Setser v. Commonwealth, Inc.*, 256 Or 11, 470 P2d 142, 145 (1970), a similar case involving an action to recover a broker's commission for producing a purchaser of property owned by the defendant, this court stated:

"It has been held that even if the seller accepts the offer of the buyer procured by the broker, that in itself is not sufficient to create a legal obligation upon the part of seller to pay the broker's commission. The cases so holding reason that there should be no recovery when the transaction is not consummated as a result of the buyer's failure to complete it. It is felt that the owner of property

who employs a broker to procure a purchaser bargains not simply for the presentation of a person who is willing to sign a contract, but one who is able and *willing to complete the sale transaction.*

"As Denning, L.J., said in Dennis Reed, Ltd. v. Goody (1950) 2 K B 277, 284, 1 All E.R. 919, 923:

" '* * * The house-owner wants to find a man who will actually buy his house and pay for it. He does not want a man who will only make an offer or sign a contract. He wants a purchaser "able to purchase and able to complete as well." '

The leading case in the United States adopting this point of view is Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 236 A.2d 843, 30 A.L.R.3d 1370 (1967).[⑳] In that case the prospective purchaser had entered into a contract of purchase with the owner but did not complete the contract because he was financially unable to do so. The court said:

" '* * * In reason and in justice it must be said that the duty to produce a purchaser able in the financial sense to complete the purchase at the time fixed is an incident of the broker's business; so too, with regard to any other material condition of the agreement to purchase which is to be performed at the closing. In a practical world, the true test of a willing buyer is not met when he signs an agreement to purchase; it is demonstrated at the time of closing of title, and if he unjustifiably refuses or is unable financially to perform *then,* the broker has not produced a willing buyer.' " 50 NJ at 548.

The court then laid down the following rule:

" '* * * When a broker is engaged by an

"⑳ See Note, 23 Rutgers L.Rev. 83 (1968) for a careful discussion of the leading case. See also, Note, 9 Ariz.L.Rev. 519 (1968); Note, 17 Cath.U.L.Rev. 487 (1968); Note 72 Dick L.Rev. 522 (1968); Note, 19 Mercer L.Rev. 460 (1968); Note, 10 Wm. & Mary L.Rev. 240 (1968)."

owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his, * * * there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, in the absence of default by the seller, the broker's right to commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale.' "

■ As stated earlier, the purchaser, Guillory, made no cash tender of $22,000 and offered no evidence of his financial ability to pay or to obtain firm financing. Further, there is no evidence that he did or could obtain the required "zone change, adequate financing, building permits and sewer permits on proposed new construction."

For the above reasons we feel the court did not err as set forth in plaintiff's first assignment of error.

Plaintiff's next assignment of error is that the court erred in finding that plaintiff breached her fiduciary duty. On this point the evidence discloses that at the time plaintiff and defendants entered into the Broker's Employment Contract, the plaintiff, through Timmins, was working for one Ronald Guillory, the prospective purchaser herein, to secure a

possible building site. Guillory desired to construct an apartment complex on the defendants' and other property in the immediate area. One week before the Broker's Employment Contract was signed, Timmins approached Mr. Grimm and asked if his home was for sale. He told her "it might be" but not for less than $20,000. Timmins, in her contact with Guillory, was instructed to "get the Grimm tract." On October 10, 1968, Timmins prepared the OFFICIAL EARNEST MONEY AGREEMENT which recites the receipt of a note for $1,000 from Guillory toward the purchase price of $20,000. The OFFICIAL EARNEST MONEY AGREEMENT Timmins prepared for Guillory and defendants' signatures also had numerous conditions on zoning, financing, and building and sewer permits previously set forth. When Timmins presented the same to the defendants for signature, they refused the offer, insisting that they receive $20,000 *net*. This explains the appearance of the word "net" on the Broker's Employment Contract. Timmins then had defendants execute an "OWNER'S COUNTER-OFFER" which asked $22,000 cash and the purchaser take possession of the premises on May 1, 1969. On October 15 Guillory signed the BUYER'S ACCEPTANCE OF COUNTER-OFFER. There is no explanation of how defendants could "net" $20,000 after paying a 10% broker's commission. There is considerable testimony in the record that the defendants did not understand the language of the different agreements, could not read the "small print" and had a lack of understanding of "these contracts." They also stated that on three occasions they told Timmins they wanted to consult a lawyer before signing any papers but she objected to their seeing a lawyer, urging that they were simple papers and she could explain them. There

is also evidence that Timmins did not make a disclosure to the defendants of her relationship with Guillory. However, Timmins denied there was any mention of wanting to see a lawyer and testified that a disclosure to defendants was complete with regard to every facet of the transaction. However, at one point in her testimony she did state: "All I knew was this one big piece of property *my client* wanted and I tried to find out who owned it now." (Emphasis ours.) It must be assumed that Timmins had Guillory in mind as "my client."

This court, in *Prall v. Gooden et ux,* 226 Or 554, 561, 360 P2d 759, 762 (1961), held:

"* * * a real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts, particularly when those contracts are with the broker himself * * * *.

"The broker should make his explanation commensurate with the education and understanding of the people he is dealing with, and if he is unable to give competent advice he should allow them to obtain it elsewhere * * *."

■ Much of the testimony in this case deals with the detailed relationship on transactions between Timmins and the defendants which, if believed, casts grave doubts on plaintiff's alleged good faith performance of her fiduciary duties towards defendants. The trial court, in its findings previously set forth, found that the plaintiff failed to prove that she had discharged her fiduciary duty to the defendants. There was ample evidence from which the trial court could have reasonably concluded accordingly. There was conflicting evi-

dence but the Findings of Fact made by the trial court are supported by some substantial evidence and this court, on appeal, is conclusively bound thereby. *Armbrust v. Travelers Ins. Co.*, 232 Or 617, 623, 376 P2d 669 (1962).

The plaintiff's third assignment of error is that the court erred in failing to find that the contract of sale was valid and enforceable and not contingent. This action was based on the Broker's Employment Contract. Because of our ruling on the first two assignments of error, we do not deem it necessary to discuss this assignment of error.

The judgment is affirmed.