Argued July 10, reversed and remanded for new trial
September 9, 1975

# WOODWORTH, *Respondent, v.* VRANIZAN, *Appellant.*

539 P2d 1055

*Thomas A. Davis,* Portland, argued the cause for appellant. With him on the briefs were Benson, Arenz, Lucas & Davis, Portland.

*Robert Bell,* Beaverton, argued the cause for respondent. On the brief were Myatt, Bollinger, Hampton & Tarlow, P.C., and Arthur L. Tarlow, Beaverton.

DENECKE, J.

This is an action for a real estate broker's commission. The court directed a verdict for plaintiff and defendant appeals.

The defendant and his wife owned a five-plex which they wanted to sell. The plaintiff broker interested a Mr. Histand in the property. After offers and counter-offers, plaintiff prepared an earnest money agreement. Defendant signed the agreement first and later Mr. Histand signed. After Histand signed, defendant's wife refused to sign because she believed that the price was too low.

Plaintiff's action was for breach of contract. Defendant contends the complaint was for damages for misrepresentation; however, we agree with the trial court's view that the complaint sounded in contract.

The defendant did not enter into any employment or listing contract with the plaintiff. The plaintiff bases his claim on a provision in the earnest money agreement providing, "I agree to pay forthwith to said broker a commission amounting to $2738.02 for services rendered in this transaction. * * *. [Signed] Ralph A. Vranizan [defendant]."

■ Defendant contends the plaintiff was not entitled to a directed verdict because before the plaintiff is entitled to a commission he has to produce a buyer who is financially able to complete the purchase. Defendant further contends that whether Mr. Histand was financially able was a question of fact and, therefore, the trial court erred in directing a verdict for plaintiff. We agree. The trial court did err.

The initial question is whether the plaintiff was obligated to find a financially able buyer before plaintiff was entitled to his commission. Plaintiff contends he was not; that defendant agreed to pay the commission "for services rendered"; that the services consisted of procuring an earnest money agreement signed by the buyer; and that the plaintiff had performed this service.

An examination of this issue exposes another untidy corner of the law.

In *DeHarpport v. Green,* 215 Or 281, 333 P2d 900 (1959), the defendant seller executed a listing agreement with the plaintiff broker. The specific terms are not set out in the opinion. The plaintiff secured an offer which defendant rejected. The trial court found the prospective buyer was not financially able to complete the transaction and held for the defendant. We affirmed, stating:

> "It has long been established that a real estate broker before he can recover a commission from his principal must establish his performance of the contract. This he may do, as was sought to be established in this case, by furnishing his employer with a binding contract executed by an intended buyer who has the ability to perform the agreement on the terms authorized by the vendor. * * *." 215 Or at 283.

In *Killam v. Tenney,* 229 Or 134, 146-149, 366 P2d

739 (1961), we affirmed a judgment for a broker's commission against the seller. The defendant seller entered into a listing agreement with the plaintiff broker. The agreement provided the plaintiff was to have the right to sell at the terms specified or such terms as owner may accept. The price and terms were listed. The agreement then provided: " 'For performing the above services for the seller, * * * the owner agrees to pay * * * [plaintiff] a fee of $20,000.00.' " 229 Or at 137. The agreement further provided: " 'In the event said property is sold, leased or exchanged during the period of this contract,' " defendant agrees to pay plaintiff a fee of $20,000.

The defendant, Tenney, and Stanley entered into an option agreement for the property. Stanley sought to exercise the option and the defendant refused to sell.

> Based upon prior cases, we stated the rule to be:
> "* * * '[U]nless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon the completion of the negotiations which he undertook, irrespective of whether or not the contract negotiated is ever actually consummated or whether the failure to complete the contract is due to the default or refusal of the employer or to that of the party procured by the broker, so long as the failure to carry it through to a successful completion is not due to any fault of the broker or so long as he has not been guilty of fraud or bad faith.' * * *." 229 Or at 146.

In *Martin v. Clinton*, 239 Or 541, 398 P2d 742 (1965), the defendant seller employed the plaintiff broker as evidenced by a contract apparently similar to a listing agreement. The contract provided that the seller agreed to pay the broker a commission for finding a buyer " 'ready and willing to enter into a deal for said price and terms.' " This court held: "We

construe this language as an agreement to procure a purchaser ready, willing and *able* to purchase the property offered for sale." 239 Or at 542. We held there was evidence to support the trial court's finding that the prospective purchaser was not financially able.

Based upon *Killiam v. Tenney,* supra (229 Or 134), we subsequently held that when a seller agreed in an earnest money receipt " 'to pay forthwith to the above-named broker a commission amounting to $5,700.00 for services rendered in this transaction,' " the broker could recover the commission. *Harris v. Coomler,* 250 Or 594, 443 P2d 637 (1968). We so held despite the fact that the buyers were unable to pay the cash contemplated in the earnest money agreement and the sale eventually was consummated on installment terms. We stated: "[I]t would appear that the sellers unconditionally committed themselves to pay the commission when they signed the agreement." 250 Or at 596. We held that it was immaterial that *Killiam* involved a listing agreement and *Harris v. Coomler,* supra (250 Or 594), involved an earnest money agreement.

Then came *Setser v. Commonwealth, Inc.,* 256 Or 11, 19-23, 470 P2d 142 (1970). In carefully stated dictum, we observed:

> "It has been held that even if the seller accepts the offer of the buyer procured by the broker, that in itself is not sufficient to create a legal obligation upon the part of seller to pay the broker's commission. The cases so holding reason that there should be no recovery when the transaction is not consummated as a result of the buyer's failure to complete it. It is felt that the owner of property who employs a broker to procure a purchaser bargains not simply for the presentation of a person who is willing to sign a contract, but one who is able and willing to complete the sale transaction." 256 Or at 19-20.

After *Setser v. Commonwealth, Inc.,* supra (256 Or 11), this issue was raised in *Brown v. Grimm,* 258 Or 55, 481 P2d 63 (1971). The plaintiff broker had been employed by the defendant sellers as evidenced by an employment contract which provided a commission was to be paid when the broker secured a ready and willing buyer. The plaintiff secured a prospective purchaser. We affirmed the trial court's judgment for the defendant sellers partly because the prospective purchaser was not shown to be financially able. We accepted the rule proposed in *Setser v. Commonwealth, Inc.,* supra (256 Or 11).

*Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972), was an action by a broker to enforce a provision in an exclusive listing agreement that if the seller withdrew the broker's authority during the listing period, the seller was obligated to pay the same commission as if the sale had been made. We reaffirmed the rule announced in *Setser v. Commonwealth, Inc.,* supra (256 Or 11). The only agreement concerning a commission was a statement by the seller that if the broker got a buyer on the terms specified by the seller, the seller would make sure the broker got his commission.

In *Boyce v. Standard Investment Co.,* 263 Or 82, 501 P2d 65 (1972), we did not mention the existence of any listing agreement. The plaintiff apparently based his right to a commission on the provisions of an earnest money agreement, the terms of which are not set out. The parties agreed that the law to be applied was that set out in *Setser* and we acquiesced.

*Larkins v. Richardson,* 263 Or 444, 502 P2d 1156 (1972), is the latest case involving a broker's right to a commission. That action was brought on a listing agreement. The broker produced a buyer who entered into a contract of sale with the seller. We again reaf-

firmed the rule stated in *Setser*. We affirmed the trial court and held the broker had not earned his commission.

The plaintiff in the present case contends:

"* * * The present case is not based upon a listing agreement. Rather, defendant executed an unconditional written agreement to pay plaintiff a real estate commission for services *previously* rendered by plaintiff for defendant. At the time of the execution of the agreement, plaintiff had fully performed. * * *." Citing *Harris v. Coomler,* supra (250 Or 594).

In *Setser* we were not called upon to distinguish between an action on a listing agreement and an action on a promise to pay a commission contained in an earnest money agreement or in a contract of sale. However, in *Setser,* we cited *Ellsworth Dobbs, Inc. v. Johnson,* 50 NJ 528, 236 A2d 843, 30 ALR3d 1370 (1967), as the leading case stating the view we advocated. There, the broker sued on the contract of sale which provided the seller agreed to pay a commission, "said commission to be paid in consideration of services rendered in consummating this sale." 50 NJ at 539.

■ We conclude that the seller's obligation to pay a commission when contracted for in an earnest money agreement should be the same as when contracted for in a listing agreement. The *Setser* rule applies to all such agreements. When the seller signs an earnest money agreement and agrees to pay a commission, he intends that the commission should be payable only when the purchaser who signed the agreement consummates the transaction.

Whether the rule would be the same where the earnest money agreement expressly provides that the commission is payable even though the purchaser is un-

able to perform we need not now decide. See *Ellsworth Dobbs, Inc. v. Johnson,* supra (50 NJ 528). The plaintiff contends the earnest money agreement in this case expressly so provides. We do not so interpret it. *Harris v. Coomler,* supra (250 Or 594), is overruled.

Plaintiff contended at oral argument that defendant in his reply brief conceded that Histand was a financially able buyer. We do not believe defendant's language should be given that interpretation. At trial the defendant made the financial ability of Histand an issue and he continued to make it an issue in his briefs and on oral argument.

The case must be remanded for a new trial. The principal issue argued in the first trial will be in issue again and that is whether the defendant is liable for the commission when his wife refused to sign the earnest money agreement.

This court has never decided this issue; however, we readily conclude that the vast majority of cases, which hold the husband is liable for the commission, are correct.[1] These cases are collected at Anno, 10 ALR3d 665 (1966).

■ The courts of other jurisdictions have reached their decisions by various reasoning, the essence of which seems to be that the contract of the parties should be construed to mean that the broker has performed his obligation if he finds an able and willing buyer. The husband assumes the responsibility of persuading his wife to sign the contract or conveyance. We find that interpretation to be consistent with what we view as the practicalities.

The Michigan court analogized:

" 'We think the contract was good between Arn-

---

[1] Alldrin v. Lucas, 260 Or 373, 380-382, 490 P2d 141 (1971), held the defendant wife who did not sign the commission agreement was not liable for the commission.

old [seller] and the plaintiffs. He knew when he made it that he would not perform it without the signature of his wife to the deed. He, in effect, bound himself to procure such signature. It in nowise differs in this respect from a contract to sell lands which one does not own at the time he makes such contract. The fact that one did not have the legal title at the time he made the contract, and could not procure it afterwards, has never been recognized as a legal defense to an action for breach of the contract.' " *Max Broock, Inc. v. Walker,* 349 Mich 63, 66, 84 NW2d 336 (1957).

The result would probably be different if the broker knew before he procured a buyer that the seller's wife would not join in the contract or conveyance; however, there is no evidence to that effect in this case.

Reversed and remanded for a new trial.