No. 84-243

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

ERA REAL ESTATE HOME & RANCH
PROPERTIES, a Montana corp.,

Plaintiff and Appellant,

-vs-

BIG HORN GAME RANCH, INC.,
a Montana corp.,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Parker, Sweeney, Healow & Lee; Mark D. Parker argued,
Billings, Montana

For Respondent:

Davidson, Beeder, Baugh, Broeder, Poppler and
Michelotti; G. Todd Baugh argued, Billings, Montana

---

Submitted: September 21, 1984

Decided: October 18, 1984

Filed: OCT 18 1984

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

ERA Real Estate appeals a summary judgment dismissing its claim for a commission in the Yellowstone County District Court.

The plaintiff real estate broker (ERA) brought this action to recover a real estate commission it believed had been earned on a large ranch sale. The defendant, Bighorn Game Ranch, Inc. (Bighorn), was the owner and seller of the 16,000-acre ranch located near Hardin, Montana. Bighorn gave Michael Murphy, an agent for ERA, a nonexclusive listing to sell the ranch in March 1982. There was no formal listing agreement executed, but the understanding between Bighorn and Murphy was that Murphy would earn a 5 percent sales commission upon making or effecting a sale.

At the time the listing was given to Murphy, Bighorn was in a Chapter XI bankruptcy proceeding. Murphy was given authority by the trustee to sell the ranch and told to take directions from Larry Feldman, the president of Bighorn. Feldman directed Murphy to sell 100 percent of Bighorn's stock, which would include the ranch asset and a substantial tax loss carry-over which Bighorn had accrued.

Acting for ERA, Murphy found a potential buyer in September 1982. Dennis Haden of Dallas, Texas, was eager to buy the ranch for its tax advantages and proposed a tax-free exchange of a building he owned in Dallas for the ranch. Feldman was amenable to the deal and signed a buy-sell agreement with the buyer on September 10, 1982. Closing was set for December 9, 1982.

The buy-sell agreement contains several provisions pertinent to this appeal. One page entitled "Special

2

Provisions" contained the following language in normal-sized type:

> "THIS SALE IS SUBJECT TO THE FOLLOWING:
>
> ". . .
>
> "E. Concurrent execution of an agreement between the holders of 100% of the common stock in Big Horn Game Ranch, Inc., wherein they agree to sell all of their stock in said corporation free and clear of all encumbrances to PURCHASER, and PURCHASER agrees to purchase same for the sum of $300,000.00
>
> ". . .
>
> "J. $142,300.00 shall be paid at closing to ERA Home & Ranch Properties, Billings, Montana.
>
> ". . .
>
> "L. This offer is made to the share-holders of Big Horn Game Ranch, Inc., but must be approved by all of the sharehold-ers and the trustee of the Big Horn Ranch, Inc. bankruptcy." (Emphasis supplied.)

The contract to make a sale was therefore conditional upon approval by the shareholders of Bighorn.

The shareholders of Bighorn were a group of oriental businessmen. The exact ownership of the common stock changed during the course of these dealings. The president Feldman negotiated with the buyer Haden under the belief he had authority to enter into a sales contract for Bighorn. Haden recalled in a deposition that Feldman told him before the buy-sell agreement was signed that he had the authority to speak for the shareholders of Bighorn Game Ranch.

The shareholders of Bighorn never unconditionally approved the proposed ranch sale and the deal never closed. On October 2, 1982, a combined meeting of the shareholders and directors was held in San Francisco. The meeting was conducted in various Eastern dialects. Feldman followed the

3

business of the meeting through interpreters and afterwards drafted his impressions into proposed minutes. These minutes were never signed by the Secretary of Bighorn or the majority shareholder, Supasit Mahaguna. They state in relevant part:

> "In principal [sic] the Shareholders and board approved the sale and exchange [of the ranch] subject to an inspection of the building in Dallas, the approval of title insurance on the Dallas building, and the approval of the net lease on the building in Dallas."

Supasit Mahaguna visited and inspected the Dallas building owned by Dennis Haden the day following the shareholder meeting. Mahaguna speaks a little English and Haden asked him if he was satisfied with the deal. Mahaguna nodded affirmatively and shook hands with Haden.

Feldman learned indirectly in December that Mahaguna had rejected Haden's purchase offer. The closing date had previously been extended to February 28, 1983. Prior to February Feldman attempted to resurrect and keep the deal alive by writing Mahaguna and requesting him to reconsider. Mahaguna did not respond. Feldman informed Haden in mid-February of these events and wrote, ". . . it currently appears as if I am not going to be able to deliver on my promise to sell you the Bighorn Game Ranch." In late February, Haden traveled to Colorado and was prepared to close but Feldman was unable to proceed without the shareholders' approval or stock certificates.

ERA brought this action to recover the real estate commission from Bighorn. The District Court granted summary judgment in favor of defendant Bighorn on April 20, 1984.

The District Court noted that the buy-sell agreement contains conditions precedent—specifically, full shareholder approval. Only upon such approval would the contract become

4

binding. The court accepted the authenticity of the minutes prepared by Feldman and stated in its order that the shareholders at the meeting had ratified the transaction "subject to an inspection of the building in Dallas." However, the trial court found the shareholders never outright approved the contract. Hence, the condition precedent was not performed, a valid contract did not result, and ERA did not effect a sale. The court concluded ERA was not entitled to a broker's commission. We affirm.

The arguments appellant ERA presents on appeal can be summarized as one issue:

Did the failure of the seller to close the sale constitute wrongful conduct entitling ERA to its broker's commission?

The parties agree that the controlling Montana cases are Diehl & Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 567 P.2d 930, and Associated Agency of Bozeman, Inc. v. Pasha (Mont. 1981), 625 P.2d 38, 38 St.Rep. 344. ERA was required to effect a sale and under Diehl we have interpreted this language to mean the broker must complete the sale to earn his commission. Completing the sale involves payment of the purchase price and conveyance of title. In Pasha, the general rule was modified: a broker is entitled to his commission even if the sale is not completed, providing a ready, willing and able buyer is procured and the failure to close was due to the wrongful conduct of the seller. See also, Ehly v. Cady (Mont. 1984), ____ P.2d ___, 41 St.Rep. 1611.

The broker ERA has failed to produce evidence of wrongful conduct on the part of Bighorn. The buy-sell agreement was clearly conditioned on full shareholder approval.

5

Indeed, this clause was added to the contract at the request of the buyer Haden. Haden undoubtedly recognized the importance of shareholder approval in a deal where the entire assets of a corporation would be purchased.

Bighorn's shareholders never unconditionally approved the sale. The "minutes" of the October shareholder meeting, even if elevated in authenticity to a signed, executed and accurate representation of the meeting, do not indicate ratification of the sale. The sale was only approved in principle and subject to the approval of the Dallas building. One shareholder did apparently inspect and approve the exchange building. However, there were several other shareholders in Bighorn and the record does not disclose their opinions.

The District Court correctly reasoned that the buy-sell agreement was a conditional contract containing the condition precedent of full shareholder approval. The condition precedent was never performed and therefore the legal obligations under the contract--i.e., payment of the broker's commission --never became enforceable. Section 28-1-403, MCA. Under these circumstances, the seller's failure to close did not constitute wrongful conduct within the meaning of our Pasha decision. Consequently, the broker ERA was not entitled to its commission on the uncompleted sale.

ERA further argues that the corporation Bighorn should be held liable for the representation by its president, Feldman, that he had authority to speak for the shareholders.

This matter is addressed by the principles of the law of agency. The third party broker would like to hold the principal, Bighorn, liable for the contract executed by the agent, Feldman. Here, where the disclosed principal did

nothing to indicate to the broker that the agent had authority to bind all shareholders, there is no liability. There was no apparent authority whereby the principal could be held liable. Restatement (Second) of Agency, § 159 (1958).

This is a case where the agent possibly exceeded his authority. Even where the agent was reasonably mistaken and believed in good faith that he acted with authorization, the Restatement, supra, would absolve the principal and hold the agent liable. See, § 329, comment b. Cf., Losinski v. American Dry Cleaning Co. (Minn. 1979), 281 N.W.2d 884; Husky Industries, Inc. v. Craig Industries (Mo. App. 1981), 618 S.W.2d 458.

In this case we have an express provision in the underlying contract that indicated additional approval from the shareholders was required. The provision should have given the broker Murphy notice that the president had no authority to bind Bighorn. See, Hansen v. Power (1977), 279 Or. 589, 569 P.2d 573 (where it appears that a person dealing with an agent knew that approval by another person was required, there can be no claim of the agent's apparent authority); Mid-State Homes, Inc. v. Berry (Ala.Civ.App. 1978), 359 So.2d 401 (where the contract for sale of real estate indicated that written approval was required, the agent's assurance that the contract would be approved did not negate the express restriction known to the buyer).

Appellant ERA cites Acmer Corporation v. State Transport Company (1976), 275 Or. 51, 549 P.2d 1114, for the proposition that a person who fails to deliver at closing is still liable for a commission.

Respondent Bighorn justifiably distinguishes this case. In Acmer the corporation was found liable, but there was an

express grant of authority to its president to sell the corporation. The president was a board member who owned two-thirds of the stock and the board of directors in a duly authorized meeting specifically granted him the authority to sell the corporation subject to approval by the owners of two-thirds of the stock of the corporation. When the president who had authorized the sale as a board member later rejected the transfer as a shareholder, the Oregon Supreme Court held the corporation liable for the broker's commission. There was no analogous grant of authority in this case. Feldman was not expressly authorized by Bighorn to sell, and Bighorn did nothing to indicate to the broker that he was. The corporation is not liable for representations by its agent that he acted with full shareholder approval, particularly when the underlying contract was expressly conditioned on such approval.

The judgment of the District Court is affirmed.

Chief Justice

We concur:

Justices

8