WEST et ux,
*Respondents,*

*v.*

GEORGI et al,
*Appellants.*

WEST et ux,
*Plaintiffs,*

*v.*

GEORGI et al,
*Respondents,*

SCHUSTER et al,
*Appellants.*

(85-5-312; CA A42645)

756 P2d 61

Michael D. Walsh, West Linn, argued the cause and filed the briefs for appellants-respondents Norman J. Georgi and Carol Jean Georgi.

James R. Schaller, Lake Oswego, argued the cause and filed the briefs for appellants Robert Schuster and Schuster and Associates.

Jerome L. Noble, Portland, argued the cause for respondents Randy West and Darlene West. With him on the brief was Steven Allen Smith, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiffs brought this action against defendants Norman and Carol Jean Georgi (the Georgis) and Schuster, Upton and Schuster and Associates (realtors) to rescind a land sale contract, alleging that defendants had misrepresented the boundaries and the acreage of the property.[1] The Georgis counterclaimed for the balance due under the contract and cross-claimed against realtors for recovery of the commission paid on the sale.[2] Realtors cross-claimed against the Georgis for attorney fees under their listing agreement. After bifurcated trials, the trial court granted plaintiffs rescission of the land sale contract, allowed the Georgis to recover the sales commission paid to realtors and denied all of the other claims. Each party appeals with respect to the part it lost. We reverse as to recovery of the commission paid to realtors and the denial of attorney fees to realtors and otherwise affirm.

We review the rescission claim *de novo*. The following facts are material to disposition of that claim: The Georgis, who reside in Indiana, owned the undeveloped subject property at all relevant times;[3] Georgi, Sr., took care of the property in the Georgis' absence; in March, 1983, the Georgis entered into a listing agreement with realtors which expressly authorized realtors to inspect and show the property to prospective purchasers; the Georgis implicitly authorized Georgi, Sr., to aid realtors in attempting to determine the general boundaries of the property; realtors exercised due care in their attempt to determine those boundaries; realtors represented

---

[1] Realtors were dismissed as codefendants before trial.

[2] The Georgis' separate cross-claim against defendant Upton was later dismissed.

[3] The subject property is essentially described as the north half of the south half of Government Lot 6 (Lot 6), the southwest quarter of Section 31, Township 2 South, Range 3 East of the Willamette Meridian in Clackamas County. Before 1949, Earl apparently owned all of Lot 6. In 1949, he conveyed the north half of Lot 6, along with the adjoining 36-foot wide strip from the south half of Lot 6, to Wiles. A fence (the north fence) was built on the southern boundary of the Wiles tract and still existed at the time of trial in this case. In 1952, Earl conveyed the south half of the south half of Lot 6 to Norman Georgi's father (Georgi, Sr.). In 1953, Earl conveyed the north half of the south half of Lot 6 to Harris. In 1975, Georgi, Sr., conveyed the south half of the south half of Lot 6 to the Georgis. In 1979, Harris conveyed the north half of the south half of Lot 6 to the Georgis. The conveyances concerning the south half of Lot 6 apparently made no reference to Earl's conveyance of the 36-foot wide strip to Wiles. Because the Earl to Wiles conveyance was before the conveyance of the subject property from Earl to Harris, the southern boundary of Wiles tract is the northern boundary of the subject property.

to plaintiffs that the southern boundary of the property was approximately 10 feet north of an old fence and plaintiffs relied on that representation; the true southern boundary is approximately 53 feet north of that fence; realtors innocently misrepresented the southern boundary to plaintiffs;[4] in August, 1983, plaintiffs entered into a contract with the Georgis to buy the property; after discovering the true southern boundary, plaintiffs, in January, 1985, offered to rescind the contract and made no further payments and, later, brought this action.

■■ To establish misrepresentation sufficient to rescind the contract, plaintiffs must prove that defendants made a false statement of material fact on which plaintiffs justifiably relied in making their decision to purchase the property. *Hampton v. Sabin,* 49 Or App 1041, 1049, 621 P2d 1202 (1980), *rev den* 290 Or 519 (1981). The Supreme Court has stated:

> " 'A purchaser has the right to rely upon the representations of the seller as to the boundaries of the land, and if the seller misrepresents the true boundary of the land, whether innocently or intentionally, it is a ground for rescission by the purchaser. [Citation omitted.]' " *Joss v. Shodle,* 262 Or 431, 433-34, 498 P2d 787 (1972) (*quoting Dreifus Lbr. Co. v. Werner et ux,* 221 Or 467, 469, 351 P2d 684 (1960)).

In *Joss,* the plaintiffs-purchasers sought rescission of a land sale contract on the basis that the defendants-sellers and their real estate agent had misrepresented the boundary line of the property by four feet. The court concluded that the plaintiffs were entitled to rescission, holding that "[t]he rescission is supported solely by the boundary misrepresentations * * *." 262 Or at 434. Here, the location of the south boundary line of the property was innocently misrepresented by 40 feet or more. Rescission is supported solely by the boundary misrepresentation, just as in *Joss,* and, on that basis, we affirm the rescission of the land sale contract.[5]

Realtors contend that the trial court erred in holding that, because the contract was rescinded, they are not entitled to retain their commission. We agree.

---

[4] Realtors correctly represented the northern boundary of the property to be the north fence line. *See* n 2, *supra.*

[5] We need not consider plaintiffs' other alleged ground for rescission.

■■   In their listing agreement with realtors, the Georgis agreed to pay realtors a certain commission

"in the event that [realtors] * * * [find] a buyer ready and willing to purchase [the subject] property * * * or in the event of any * * * contract to sell * * * [the subject] property by [the Georgis] during the life of this [listing agreement] * * *."

The listing agreement is a contract independent of the land sale contract executed by plaintiffs and the Georgis. If the conditions of the listing agreement were met, realtors were entitled to the commission, even if the land sale contract is rescinded. *See Woodworth v. Vranizan,* 273 Or 111, 118, 539 P2d 1055 (1975); *see also Sipe v. Pearson,* 276 Or 715, 720-21, 556 P2d 654 (1976). Here, the Georgis entered into a "contract to sell" the property to plaintiffs "during the life of" the listing agreement. Furthermore, as evidenced by plaintiffs' entering into the land sale contract, realtors produced buyers, plaintiffs, who were "ready and willing" to buy the property. Realtors also presented uncontroverted evidence that plaintiffs were financially able to perform their obligations under the contract. *See Gibson Bowles, Inc. v. Montgomery,* 51 Or App 313, 316-17, 625 P2d 670 (1981). Under the terms of the listing agreement, therefore, realtors are entitled to retain the commission, notwithstanding the rescission of the land sale contract.[6] *See Woodworth v. Vranizen, supra.*

■   Realtors next contend that the trial court erred in denying them attorney fees for their defense against the Georgis' cross-claim.[7] The listing agreement provides that,

"[i]n case of suit or action on this contract, [the Georgis] agree to pay such additional sum as the court may adjudge reasonable as [realtors'] attorneys [*sic*] fee in said suit or action and appeal thereof."

The Georgis' cross-claim to recover the commission paid to realtors essentially asserts that realtors are not entitled to the commission under the listing agreement. It is therefore a "suit or action" on that contract and, on that basis, realtors are

---

[6] The Georgis contend that, because realtors were not authorized to show the boundaries to prospective purchasers, realtors breached their duty to the Georgis. That contention lacks merit and requires no discussion.

[7] Realtors' claim for indemnity and attorney fees to defend against plaintiffs' rescission claim has no merit.

entitled to attorney fees for their defense against the Georgis' cross-claim.

Reversed as to recovery of commission paid to realtors and denial of attorney fees to realtors, and remanded for determination of attorney fees; otherwise affirmed.[8]

**JOSEPH, C. J.,** concurring.

I join in the majority opinion and write only to express a couple of reservations.

As I understand the purchasers' position in this case, they agree that a fence represents the true north property line of the subject tract—even though the property description in all of the documents, including the title insurance policy, describes a line north of that. They claim that it is the mislocation of the actual southern property line that entitles them to rescission. I have real doubts, if that is in fact all that they claim was misrepresented to them, that they can claim to have been materially deceived. I am inclined to think that the matter would have been best resolved by denying rescission and allowing them a credit against the purchase price for the missing area.

I might be more insistent on that point, were it not for the fact that, even after the trial and even after the briefing, no one knows exactly what the size and shape of the tract really is or exactly where it is located. Only a survey would do that, and no one seems willing to pay for that. I am forced to conclude that, on balance, what the trial court did was the most equitable solution, given the state of the record.

---

[8] We need not address the other assignments of error raised by the parties.